**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

A.G. and L.G., on behalf of N.G.,

                        Plaintiffs,

    --against--                      **AMENDED COMPLAINT**

Richard F. Daines, as Commissioner of the New York     **08 Civ. 1576 (LAK)**
State Department of Health, and Thomas R. Frieden,
As Commissioner of the New York City Department
of Health & Mental Hygiene,

                        Defendants.

-------------------------------------------------------------

      Plaintiffs A.G. and L.G., on behalf of N.G., by their attorneys, Mayerson & Associates, as and for their Complaint against defendants, Richard F. Daines as Commissioner of the New York State Department of Health ("NYDOH") and Thomas R. Frieden as Commissioner of the New York City Department of Health & Mental Hygiene ("DHMH"), allege and state the following:

    1.  Plaintiff N.G. is (now) a three-year-old boy diagnosed with an autism spectrum disorder. At all relevant times, N.G. was a student eligible for early intervention ("EI") services (sometimes referred to as "birth to three") pursuant to PHL § 2540, *et. seq.*,

    2.  Plaintiffs reside within New York City, in Manhattan, and are entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400 *et. seq.*, and the pertinent implementing regulations promulgated under the Code of Federal Regulations, as well as the New York State Education Law and its implementing regulations.

3. Although well known to defendants, plaintiffs are not expressly identified herein by their given names or address, nor further identified because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 ( "FERPA").

4. Upon information and belief, the DOH and DHMH are jointly responsible for the operation and management the New York City Early Intervention Program ("EIP"). Both procedurally and substantively, the DOH and DHMH were and still are statutorily obligated under the IDEIA, as well as the laws of the State of New York, "to provide early intervention services for infants and toddlers with disabilities and their families." Defendant is thus legally responsible to N.G. and his parents to ensure procedural and substantive compliance with the IDEIA and New York's implementing regulations.

5. This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the "Individuals with Disabilities Education Improvement Act" ("IDEIA"), and in particular, 20 U.S.C. § 1439(a)(1), in order to seek review and reversal of the January 16, 2008 Decision of Kimberly A. O'Brien, Esq., Administrative Law Judge ("ALJ").[1] This action is being brought in an effort to secure procedural and substantive due process entitlements, as well as declaratory and reimbursement relief that was denied to plaintiffs pursuant to the ALJ's Decision.

6. This action also seeks adjudication of Prongs II and III of the Burlington/Carter test for reimbursement as the ALJ failed to address and adjudicate such issues.

7. This Court, pursuant to 20 U.S.C. §§ 1415(i)(2)(A) and 1439(a)(1), 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in

---

[1] A copy of ALJ's Decision has been annexed hereto as Exhibit A.

controversy. Venue is proper in that plaintiffs and defendant all reside or are situated within this district.

8. The underlying administrative "due process" proceeding was brought by plaintiffs pursuant to the IDEIA to secure declaratory and reimbursement relief during the 2006-2007 school year upon proper notice duly given by plaintiffs.

9. N.G. was born on December 29, 2004. N.G. is currently a three-year-old boy diagnosed with an autism spectrum disorder.

10. On or about October 2006, N.G. was evaluated by the EIP's evaluators and found eligible for the EIP. A meeting was scheduled for November 13, 2006 to develop N.G.'s Individualized Family Services Plan ("IFSP"). Plaintiffs, N.G.'s parents, also secured independent evaluations from Dr. Christopher Lucas and Dr. Cecelia McCarton that provided specific recommendations for the level and frequency of services for N.G.

11. There is compelling evidence in the record that defendant impermissibly predetermined N.G.'s services and service levels, without due regard for and genuine consideration of the independent evaluations secured from Dr. Lucas and Dr. McCarton. Defendant also apparently followed internal policies and limitations that precluded the genuine individualization of N.G.'s IFSP.

12. In view of Deal v. Hamilton County Board of Educ., 392 F.3d 840 (6th Cir. 2004), *r'hrg and r'hrg en banc denied*, 2005 U.S. App. LEXIS 5631 (6th Cir. 2005), *cert. denied*, 546 U.S. 936 (2005), and Winkelman v. Parma City School Dist., 127 S.Ct. 1994 (2007), N.G.'s parents were also deprived of meaningful participation at N.G.'s IFSP meeting to recommend services and service levels.

13. On the last day of a six-day hearing, the ALJ accepted documentary evidence from defendant reflecting an ostensible "log" of telephone contact and other communication with N.G.'s parents and others. The personnel who wrote in the log were not called to testify. Plaintiffs' counsel waived any "five day" authentication or other procedural objections to such evidence being admitted believing, in good faith, that plaintiffs would have an opportunity to provide rebuttal testimony.

14. Although the ALJ applied a relaxed evidentiary standard to accept defendant's "log," the ALJ then arbitrarily and improperly refused plaintiffs' request for an opportunity to present any rebuttal testimony with respect to the new evidence represented by defendant's "log."

15. The ALJ also unduly restricted plaintiffs' counsel in cross-examining defendant's witnesses. Even though impartial hearings are supposed to be subjected to a more relaxed evidentiary standard, the ALJ ordered plaintiffs' counsel not to use leading questions on cross-examination as of that were an accepted limitation on questioning. Even in the most formal evidentiary settings, the Federal Rules of Evidence would permit the use of leading questions on cross-examination.

16. Upon information and belief, the ALJ was biased, not impartial, had already made up her mind, and did not appreciate the applicable legal standards. Such bias and partiality only revealed itself on the last day of hearing.

17. On or about January 16, 2008, ALJ O'Brien rendered her decision. As to plaintiffs' reimbursement claim for the 2006-2007 school year, ALJ O'Brien erroneously held, as a matter of law, that N.G.'s IFSP was procedurally and substantively appropriate

and that N.G.'s parents "should not be compensated for any services they have obtained for N.G." (Decision, p. 11).

18. The ALJ's mere *sixteen* "Findings of Fact" are conclusory and generic and they do not even begin to scratch the surface of a six-day evidentiary record.

19. The ALJ erroneously failed to find, as a matter of law, that there had been impermissible predetermination.

20. The ALJ erroneously failed, as a matter of law, to find that defendant failed to meaningfully include N.G.'s parents and independent evaluations in the IFSP development process.

21. The ALJ erroneously failed to find, as a matter of law, that the DHMH improperly developed service levels that were the product of policy and custom, rather than genuine individualization based on N.G.'s unique needs.

22. The ALJ applied erroneous legal standards and/or ignored the applicable legal standards.

23. The ALJ even violated the standards set forth in New York State's "Manual for Administrative Law Judges and Hearing Officers."

WHEREFORE, it is respectfully submitted that, after the consideration of "additional evidence" expressly allowed by the IDEIA to complete the record, this Court, upon its modified *de novo* review, should:

a. Reverse the ALJ's Decision;

b. Adjudicate the Prong II and Prong III issues that the ALJ failed to adjudicate;

  c. Order that the DHMH reimburse N.G. and his parents, as previously requested, for appropriate intervention and support services obtained for N.G.'s benefit during the 2006-2007 school year;

  d. Declare N.G. and his parents to be the "substantially prevailing party" and grant leave to plaintiffs to submit a statutory fee application; and

  e. Accord plaintiffs such other, further and different relief as may be just under the circumstances.


Dated: May 9, 2008  
   New York, New York  

              _____  
              Gary S. Mayerson (GSM 8413)  
              Mayerson & Associates  
              Attorneys for Plaintiffs  
              330 West 38th Street, Suite 600  
              New York, New York 10018  
              (212) 265-7200  
              (212) 265-1735 (facsimile)

STATE OF NEW YORK  :  DEPARTMENT OF HEALTH

| | |
|---|---|
| IN THE MATTER<br><br>OF<br><br>ALEX AND LISA GRINBERG<br>Petitioners<br><br>ACTING ON BEHALF OF "NG" INFANT | DETERMINATION<br><br>AND<br><br>ORDER<br><br> |

On written notice to Petitioners, Alex and Lisa Grinberg, acting on behalf of "NG," a hearing was held before **KIMBERLY A. O'BRIEN ESQ., ADMINISTRATIVE LAW JUDGE** at the Offices of the New York State Department of Health, 90 Church Street, 4th Floor, New York New York.

**ALEX AND LISA GRINBERG** (hereinafter Petitioners or Parents) appeared in person and by Counsel **GARY S. MAYERSON ESQ.** The New York City Early Intervention Program (hereinafter Respondent or NYCEIP) appeared by **KATHERINE A. CLEMENS ESQ.** Deputy General Counsel, Office of General Counsel for Mental Hygiene. Evidence was received and argument heard, and transcripts of these proceedings were made.

### PROCEDURAL HISTORY

| | |
|---|---|
| Date of Request for Hearing | May 1, 2007 |
| Notice of Hearing | May 11, 2007 |
| Originally Scheduled Hearing Date | May 25, 2007[1] |
| Date of Request for Adjournment | May 21, 2007 |

---

[1] There being no objection Petitioner was granted an adjournment of the original hearing date from May 25, 2007 to July 16, 2007.

| | |
|---|---|
| Hearing Dates | July 16, 2007, July 30, 2007, August 6, 2007, September 24, 2007, October 2, 2007, October 25, 2007 |
| Witnesses for Petitioner | Evelyn Arias, Dr. Deborah Clark, Tamar Frankel, Lisa Grinberg, Marisa Leyden, Dr. Cecelia McCarton, Elizabeth Placido, Margery Rappaport, Panos Rekoutis, and Julie Sandor |
| Witnesses for Respondent | Nichole Aiello, Cheryl Dombrowski, Dr. Jeanette Gong, and Dr. Prashil Govind |
| Final Hearing Transcript Received | November 2, 2007 |
| Final Briefs Submitted | December 4, 2007[2] |

## STATEMENT OF THE CASE

On May 1, 2007, the Petitioners Alex and Lisa Grinberg parents of "NG" exercised their right to an impartial hearing, pursuant to New York State Public Health Law ("PHL") Section 2549 and 10 NYCRR Section 69-4. At the time of the request for an impartial hearing, "NG" was eligible for early intervention ("EI") services pursuant to PHL Section 2540 *et seq*. The Early Intervention Program provides each eligible child with specific developmental services as set forth in their own Individualized Family Services Plan ("IFSP"). The impartial hearing officer is required to address whether or not the EI services offered to "NG" were "appropriate" under the Individuals with Disabilities Education Act, 20 U.S.C. Section 1471 *et. seq.* ("IDEA.") Early Intervention services are defined in PHL Section 2541 and PHL Section 2545(7) requires that each IFSP include the specific early intervention services necessary to meet the unique needs of

---

[2] On November 21, 2007 the Petitioners' Counsel requested a one week extension for submission of the final briefs. There being no objection to the request the submission deadline was extended from November 27, 2007 to December 4, 2007.

2

the child and the family. Petitioners requested this hearing and concede that they have the burden of proof in this proceeding, and that they must prove by substantial evidence that "NG's" IFSP is not appropriate. (Tr. 36-7; 10 NYCRR Part 51; SAPA Section 306(1))

### FINDINGS OF FACT

The following Findings of Fact were made after a review of the entire record in this matter. Conflicting evidence, if any, was considered and rejected in favor of the cited evidence. Numbers or letters below in parentheses refer to exhibits (denoted by the prefix "Ex.") or transcript page numbers ("Tr."). These citations refer to evidence found persuasive by the Administrative Law Judge in arriving at a particular finding.

1. "NG" was born on December 29, 2004 (Ex. A).

2. On or about October 2006, "NG" underwent a multidisciplinary evaluation and screening with evaluators under contract with the NYCEIP. (Ex. J) The Respondent's Evaluation Report was provided to the Early Intervention Program and to the Petitioners. (Tr. 975)

3. NYCEIP's evaluators found that "N.G." was eligible for the Early Intervention Program, and an IFSP meeting was scheduled for November 13, 2006. (Ex. C)

4. On or about November 2006, the Petitioners obtained Independent Evaluations for "NG" from Dr. Christopher Lucas and Dr. Cecilia McCarton (Ex. G & Ex. H) The Independent Report provides a specific recommendation for the level and frequency of services including thirty hours of ABA therapy over "a full seven day period." (Ex. H p.8)

5. On or about November 13, 2006 an IFSP meeting was held. (Ex. C) Just prior to the start of the IFSP meeting a copy of "NG's" Independent Report was provided to Evelyn Arias, EIOD. (Tr. 346, 348, 900, 1001-2) The IFSP meeting lasted an hour or more, and the required participants were

present and had a copy of the Respondent's Evaluation Report. (PHL Section 2545; Tr. 361, 367-69, 901-2) The Petitioners were the only people at the meeting who had personal knowledge about "NG," and they described their child and his development, and discussed goals and objectives for "NG" with those participating in the IFSP meeting. (Tr. 367-72, 901, 1003) The meeting participants talked about and considered the substance of the Respondent's Report and the Independent Report. (Tr. 367-72, 377, 880, 901, 1006-7, 1283-85) The Respondent's Report and the Independent Report identified similar issues and types of services for "NG" including: twelve month home based program, ABA Therapy, Speech and Language Therapy, Occupational Therapy, Parent/ Family Training and Team Meetings. (Ex. G, Ex.H & Ex. J; Tr. 369-71, 985-991, 1004, 1284, 1292, 1296, 1709-10) At the conclusion of the IFSP meeting, a determination was made about the type, level and frequency of developmental services appropriate for "NG" and this was documented in the IFSP, and "NG" was also referred for a physical therapy evaluation. (Ex. C; Tr. 320, 361, 367-8) The Petitioners disagreed with the level and frequency of services provided for in "NG's" IFSP and noted this in writing directly on the IFSP. (Tr. 377, 909, 911, 1298-9; Ex. C)

6.   During the IFSP meeting, the Petitioners chose Theracare as the Service Coordinator and Theracare created a schedule for the implementation of the services as provided for in "NG's" IFSP and subsequently created a schedule for the speech services accepted by the Petitioners. (Ex. N & Ex. 4; Tr. 377, 994, 1017, 1021, 1026, 1246-9, 1258, 1772-85, 1840; PHL Section 2543 & 2545(5))

7.   Participation in the early intervention program is voluntary, and it is not unusual for parents to refuse or limit their child's participation in the program. (Tr. 1586-1588, 1622; PHL Section 2540 *et. seq.*)

8. In a letter dated November 17, 2006 from the Petitioners to NYCEIP, the Petitioners stated that they accepted the speech and language services offered in the November 13, 2006 IFSP. However, the Petitioners stated that the "remaining services are not adequate or appropriate" for their child and they intended to secure their own services for "NG" and "seek reimbursement for these costs from the 'Department'." (Ex. F)

9. The Petitioners accepted home based speech and language therapy services from the Respondent until February 2007 and then obtained the same level of private speech services for "NG" outside the home at their own expense. (Tr. 939, 941,944, 947-8) The Petitioners did not advise the NYCEIP about their dissatisfaction with a provider or scheduling problems. (Tr. 950, 1036, 1038-43, 1059-1, 1812 -1814)

10. Children participating in the NYCEIP receive ABA services ranging from ten to thirty hours or more per week. (Tr. 379-80,1363, 1371, 1736-37)

11. "NG" has received "comprehensive and intensive intervention" which includes thirty-five to forty hours of ABA therapy provided seven days a week. (Ex. D)

12. The Petitioners were advised at the IFSP meeting and throughout the early intervention services application process about how to address questions and concerns about the Early Intervention Program, and given information about the right to mediation and a fair hearing if they disagree with the level, frequency or type of services provided for in the IFSP. (Tr.377-378, Ex C & Ex. 9C)

13. Each IFSP is initially reviewed at three months and at least every six months thereafter or sooner if the parents or providers request changes to the level or type of services provided. (Tr.370-1, 1703-4; PHL Section 2545; Ex.9A, Ex. 9B & Ex.9C)

14. A Service Provider may at any time recommend a change, reduction and/or addition to the level and /or type of service to be provided to a child by filling out and submitting a justification letter and/or a "Request for Change in Services Form" stating why the modification is necessary, and these requests are often approved. (Ex. 9A, Ex. 12; Tr. pp. 370-71, 1301-2, 1366,1525,1566-9,1703-4)

15. The Petitioners were provided with information about mediation and fair hearings requests. (Ex.C, Ex. 9C, Ex. 11& Ex.12; Tr. 1578, 1580-1, 1583, 1593-4)

16. On May 1, 2007, approximately five months after Petitioners had put intensive services in place for "NG" at their own expense, the Petitioners requested mediation and a fair and impartial hearing. (Ex. A; Tr.1031).

## BACKGROUND

"NG" was referred to the early intervention program and was evaluated by Respondent's evaluators. A written report including a summary and four evaluations of "NG" was issued qualifying "NG" to receive early intervention services ("Respondent's Report.") The Respondent's Report did not contain specific recommendations about the level or frequency of services "NG" should receive. The Petitioners obtained their own Independent Evaluations Report for "NG" (Independent Report) which contains a specific recommendation for the type, level and frequency of services including thirty hours of ABA services provided seven days a week. An IFSP meeting was held on or about November 13, 2007. At the conclusion of the IFSP meeting an IFSP was issued and it provided for among other services twenty hours of ABA therapy provided five times per week. While the Independent Report and the IFSP contained different recommendations for the level and frequency of services, both identified similar

hearing to seek relief from what they allege was an inappropriate IFSP which was the result of a predetermined "standard package" IFSP created without benefit or consideration of "NG's" individual needs and/or Respondent's inability to provide services set forth in the IFSP including speech and language services and/or the conduct of the IFSP meeting was inappropriate and procedurally flawed which ultimately resulted in an inadequate and inappropriate provision of services as set forth in "NG's" IFSP. Specifically, the Petitioners seek reimbursement for all developmental services, attorneys' fees and any other recoverable costs that they obtained for "NG."

### Pre Determination of "NG's" IFSP

The first issue to be decided is whether "NG's" IFSP was pre determined. The Petitioners contend that before the IFSP meeting Respondent decided that "NG" would be provided with a "standard package of services." Petitioner, Lisa Grinberg testified that well before the IFSP meeting was held Elizabeth Placido, Initial Service Coordinator, told her that "NG" would get a "pretty standard package."(Tr. 878, 1084) Ms. Grinberg said "NG" ultimately received the "standard twenty hours of ABA services" provided for in the NYS Department of Health Early Intervention Guidelines. (Ex 9A) Ms. Placido does not recall discussing levels or frequency of services with Ms. Grinberg, and she did not participate in "NG's" IFSP meeting. (Tr. 846)

I conclude that "NG's" IFSP was not pre determined. The hearing record contains evidence from multiple sources that varying levels and frequency of ABA and other services are provided to children eligible and participating in the early intervention program and these determinations are made at the child's IFSP meeting. Further, The New York State Department

of Health Guidelines ("Guidelines") for the provision of early intervention services are by definition guidelines not rules or mandated requirements. The Guidelines recommend that the level, frequency and type of services provided to a child participating in the early intervention program vary depending on a number of factors including: age, severity of symptoms, rate of progress, a child's health and tolerance for the intervention, and family participation. (Ex. 9A) The Petitioner's interpretation of what she believes she was told by someone who did not participate in the IFSP meeting, and her observation that the Guidelines generally recommend twenty hours of ABA services and "NG's" IFSP provides for twenty hours of ABA services is not sufficient to conclude that "NG's" IFSP was predetermined.

### Scheduling and Provision of Early Intervention Services

Petitioners contend that the Respondent could not provide the services set forth in the IFSP and the speech and language services Petitioner received from the Respondent were inadequate and Respondent failed to provide the speech services as set forth in "NG's" IFSP. Immediately after the IFSP meeting Theracare began to work on scheduling services for "NG." A short time after the IFSP meeting services for "NG" were scheduled and then the Petitioners notified the NYCEIP that they would accept only speech and language services. The speech services were scheduled and provided by Theracare. In February 2007, without notifying NYCEIP that they were unhappy with one of the providers and having difficulty scheduling speech services, the Petitioners terminated the home based speech services provided by Respondent and obtained the same level of speech services for "NG" outside the home setting at their own expense.

I conclude that Respondent could provide the services as set forth in "NG's" IFSP and when Petitioner notified NYCEIP that they would accept only speech and language services

9

### Team "N"

The burden was on the Petitioners to prove that the IFSP was not appropriate. Almost immediately after the IFSP meeting, the Petitioners chose to independently assemble a team of the "best" service providers in the area that they dubbed "Team N." "NG" receives forty hours a week of home based ABA services provided over a seven-day period and Petitioners have twenty-four hour access/seven days a week to "NG's" Team Coordinator. The Petitioner, Lisa Grinberg, provided extensive testimony about her family's commitment to achieving optimal results for "NG." The Petitioners receive intensive parent training, and Ms. Grinberg testified the Petitioners had a window installed in "NGs" room so that she could observe "NG" and the service providers. (Tr. 921, 940-41) Ms. Grinberg testified that she thinks the forty hours of ABA services" "NG" is currently receiving is appropriate and she also said the Petitioners would accept reimbursement for thirty hours of ABA services. (Tr. 920-22, 1080 )

While it is understandable that the Petitioners want the very best for "NG," and that "NG" has an intensive plan in place where "NG" has realized significant benefit, the Petitioners have failed to prove by substantial evidence that "NG's" IFSP is not appropriate and that he could not realize meaningful benefits from the level of ABA services and other developmental services provided for in "NG's" IFSP. After due and careful consideration of the law, regulations, and hearing record, I have determined that "NG's" IFSP is appropriate. Petitioners should not be compensated for any services they have obtained for "NG," attorneys fees or related costs.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED THAT:**

1. The Petition is **DISMISSED** in all respects;

2. This **ORDER** shall be effective upon service on the parties by personal service or by certified or registered mail.

DATED: Troy, New York
       February 16, 2008

_____
**KIMBERLY A. O'BRIEN**
Administrative Law Judge


To: Alex and Lisa Grinberg
    50 Sutton Place South Apt 9A
    New York, New York 10022

    Gary Mayerson, Esq.
    Mayerson & Associates
    330 West 38th Street, Suite 600
    New York, New York 10018

    Katharine Clemens, Esq.
    New York City Department of Health and Mental Hygiene
    Early Intervention Program
    125 Worth Street, Room 618
    New York, New York 10013

12