UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

A.G. and L.G., on behalf of N.G.,

                                     Plaintiffs,

           -against-

Richard F. Daines, as Commissioner of the New York State
Department of Health, and Thomas R. Frieden, as
Commissioner of the New York City Department of Health
& Mental Hygiene,

                                   Defendants.

------------------------------------------------------------------------ x

08-Civ.-01576 (LAK)(HBP)

**THOMAS R. FRIEDEN, AS COMMISSIONER
OF THE NEW YORK CITY DEPARTMENT
OF HEALTH & MENTAL HYGIENE'S
MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**

<u>**PRELIMINARY STATEMENT**</u>

       Plaintiffs, the parents of a student with a disability, brings this action seeking to appeal an administrative decision by an Administrative Law Judge ("ALJ") employed by the New York State Department of Health ("DOH"). In that decision, the ALJ found that the New York City Department of Health and Mental Hygiene ("DHMH") did not predetermine N.G.'s ("infant plaintiff") Individualized Family Service Plan ("IFSP"); provided infant plaintiff with an appropriate level of services under the Individuals with Disabilities Education Act, 20 U.S.C. Section 1471 *et. seq.* ("IDEA"); and found that plaintiffs had not met their burden with respect to proving that infant plaintiff's IFSP was not appropriate and hence, were not entitled to compensation for any of the services they had obtained for infant plaintiff. Thomas R. Frieden, as Commissioner of the New York City Department of Health & Mental Hygiene ("defendant")

respectfully moves this Honorable Court for Summary Judgment under Rule 56(b) of the Federal Rules of Civil Procedure and Section 1415(i)(2) of the IDEA and submits this memorandum of law in support thereof.

The central issue before the Court is whether plaintiffs sustained their burden under *Burlington School Comm. v. Dep't of Education*, 471 U.S. 359 (1985); *Carter*, 510 U.S. 7 (1993).[1] Under *Burlington* and *Carter*, a municipality may be required to reimburse a payment for the educational program selected by the parent only if: (1) the educational program recommended by the municipality was inadequate or inappropriate, (2) the equities support the parent's claim, and (3) the program selected by the parent was appropriate. *Burlington*, 471 U.S. at 395-6; *Carter*, 510 U.S. at 291-2. Under *Shafer v. Weist*, 546 U.S. 49 (2005), it is the parents' burden to demonstrate all three factors including the appropriateness of the DHMH's program.[2] Where a school district or entity fails to provide an appropriate educational program, a parent may unilaterally place a disabled student in an private program appropriate to meets the child's special education needs and obtain reimbursement of tuition. *See Carter*, 510 U.S. at 12-13; *Walczak*, 142 F.3d at 129. However, "if parents believe that the state has failed their child in this regard, they may, at their own financial risk, enroll the child in a private [program] and seek retroactive reimbursement for the cost of the private [program] from the state." *See Gagliardo v.*

---

[1] The IDEA, is divided into two sections: Part C for children up to the age of 3, and part B, for children age 3 and older. Much of the case law interpreting IDEA developed from challenges to programs for older children in Part B programs, which are most often provided by education agencies. Therefore, the defendant in such cases, depending on the terminology used in the State or the locality, is sometimes referred to as "school district", "state agency", "educational agency", "local agency", or "municipality".

[2] In August 2007, in response to the U.S. Supreme Court's *Shaffer* decision, and subsequent to the commencement of the administrative hearing in the instant case, the New York State Legislature passed a revision of Education Law ¶ 4404 placing the burden of proof on the school district or municipality with the regards to the appropriateness of placement. This law became effective on October 14, 2007. However, counsel for plaintiffs acknowledged at the administrative hearing (Tr. at 36), that the burden of proof at the underlying administrative hearing was governed by *Shaffer*, the standard in effect at the commencement of the hearing.

*Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111 (2d Cir. 2007); *citing Burlington*, 471 U.S. at 370, 373-74.

 For the reasons discussed below, Plaintiffs have failed to meet their burden under *Burlington/Carter* in establishing that the defendant's program for infant plaintiff was inappropriate and that the equities support the parents' claim. Accordingly, defendant is entitled to judgment as a matter of law, and its motion should be granted.

## STATEMENT OF FACTS

 The Court is respectfully referred to defendant's Rule 56.1 Statement of Material Facts, dated July 30, 2008 ("Defendant's 56.1 Statement"), for a statement of those material facts which are not in dispute, and on which this motion is based.

## ARGUMENT

### I. Standard of Review and Summary Judgment Standards in an IDEA Case

 Defendant moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Local Civil Rule 56.1 of this Court and Section 1415(i)(2) of the IDEA. Defendant submits, for the reasons set forth herein, that the undisputed material facts before this Court entitle Defendant to judgment in its favor as a matter of law. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in

favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted).

Pursuant to Section 1415(i)(2) of the IDEA, a party dissatisfied with an ALJ's decision may appeal to a state court or federal district court. The appeal is one of "modified *de novo* review"   On appeal, the court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. *20 U.S.C. § 1415(i)(2)(B-(C))*; see also *Muller v. Comm. on Special Education*, 145 F. 3d 95, 101 (2d Cir. 1998); *M.B. v. Arlington Cent. Sch. Dist.*, 2002 U.S. Dist. LEXIS 4015, at *6 (S.D.N.Y. March 12, 2002).

The Supreme Court and the Second Circuit have interpreted the IDEA as strictly limiting judicial review of state administrative decisions. *Collins v. Bd. of Education of the Red Hook Cent. Sch. Dist.*, 164 Fed. Appx. 19, 20 (2d Cir. 2006) (citing *Walczak v. Florida Union Free Sch. Dist.*, 142 F. 3d 119, 129 (2d Cir. 1998); *Bd. of Education v. Rowley*, 485 U.S. 176, 206 (1982)). A district court review of an ALJ decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. 176, 206;  *accord Walczak*, 42 F.3d at 129. "While federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lack[s] the specialized knowledge an experience necessary to resolve persistent and difficult questions of educational policy.'" *Sherman v. Mamaroneck Union Free Sch. Dist.*, 340 F. 3d 87, 93 (2d Cir. 2003) (quoting *Walczak*, 142 F. 3d at 129 (internal quotation marks and citations omitted)). The federal courts should defer to the expertise of state and local educational agencies and they are

required to defer to the findings made at the state administrative proceedings, including the final decision of the state authorities. *Muller*, 145 F.3d at 101 (internal citations omitted).

Unlike in an ordinary summary judgment motion, a summary judgment motion brought in an IDEA case under Section 1415(i)(2), the existence of a disputed issue of material fact will not defeat the motion. *J.R. v. Bd. of Education of the City of Rye Sch. Dist.*, 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004) (*citing Antonacchio v. Bd. of Education of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003). Rather, "federal courts reviewing administrative determinations under the IDEA must base their decisions on 'the preponderance of the evidence.'" *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F. 3d 377, 380 (2d Cir. 2003) (citing 20 U.S.C. § 1415(i)(2)(B)).

As discussed more fully below, the Court should affirm the ALJ's decision here. Plaintiffs cannot meet their burden of proving: (1) that the educational program recommended by the DHMH was inadequate or inappropriate, or that (2) that the equities support the parent's claim. Hence, the ALJ was correct in finding that the defendant provided plaintiff with an appropriate educational program. Plaintiffs also cannot prevail on their other claims, including their allegation that the were not allowed to participate in the process of creating the IFSP and their claim of judicial bias against the ALJ.

## II.    Plaintiffs Have Failed to Meet Their Burden Of Showing That The IFSP Was Inappropriate As Required By The Three Part Burlington/Carter Test

A parent challenging the DHMH's decision to provide services to their child pursuant to its Early Intervention Program ("EIP") must satisfy all of the *Burlington/Carter* test by proving three factors: (1) that the educational program for the child that was recommended by the DHMH was inadequate or inappropriate, (2) that the equities support the parent's claim, and (3) that the program selected by the parent was appropriate.

In reviewing the adequacy of an IFSP, there are two issues relevant to federal review: 1) whether the development of the educational plan for the student conformed to procedural requirements, and 2) whether the educational plan was reasonably calculated to confer educational benefit on the student. *Walczak*, 142 F.3d at 129 (*citing Rowley*, 458 U.S. at 206-07).

Review of a parent's unilateral placement similarly focuses on whether the placement's program was reasonably calculated to confer educational benefits on the student. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006) (*citing Rowley*, 457 U.S. at 207; *Muller*, 145 F.3d at 105). As no one factor is dispositive in evaluating a unilateral placement, courts make the determination based on the totality of the circumstances. *Frank G.*, 459 F.3d at 364 (*citing Rowley*, 457 U.S. at 207; *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 768 (6th Cir. 2001)). Parents making unilateral placements must also conform to certain procedural requirements, but any failure to do so is taken into account when weighing equitable considerations. *See M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000).

## A.    The Educational Program And Services Recommended By The DHMH Were Appropriate

Under the *Burlington/Carter* test, a parent seeking reimbursement for private services provided to their child must demonstrate, in the first instance, that the program offered by the DHMH is inappropriate. *Shafer v. Weist*, 546 U.S. at 62. As discussed more fully below, Plaintiff here has not, and cannot, meet that burden. As the ALJ correctly concluded, the DHMH followed the applicable state and federal procedures in evaluating the infant, and properly concluded that the IFSP and special education services provided were appropriate. Rule 56.1 Statement at ¶17-23, 30-33. Thus, the DHMH's proffered IFSP was an appropriate program

under the IDEA, and this Court should affirm the ALJ's decision denying reimbursement for any services the plaintiffs obtained for infant plaintiff, attorney's fees, or other related costs.

1.    **The IFSP Formulated by Defendant For Infant Plaintiff Conformed with The Procedural Requirements of Both Federal and State Law.**

The IDEA requires the DOH and the DHMH to develop an EIP specifying the procedures and requirements which must be followed. *20 U.S.C. § 1431.* State regulations require the creation of a comprehensive child-find program, to ensure that eligible children in the state are identified, located, referred to an early intervention official and evaluated. *N.Y. Pub. Health Law § 2542.* The early initial official then designates an initial service coordinator who establishes a contact with the family. *N.Y. Pub. Health Law § 2543.*

In accordance with the demands of the IDEA, New York State regulations specify that infants and toddlers who may have disabilities are entitled to a multidisciplinary evaluation, with parental consent. *N.Y. Pub. Health Law § 2544.* This evaluation includes: (i) a review of pertinent records related to the child's current health status and medical history; (ii) an evaluation of the child's level of functioning in each of the developmental areas set forth in § 2541(c); (iii) an assessment of the unique needs of the child in terms of each of the developmental areas set forth in § 2541(c), including the identification of services appropriate to meet those needs; (iv) an evaluation of the transportation needs of the child, if any; and (v) such other matters as the commissioner may prescribe in regulation. *Id.* If after the evaluation, a determination is made that the infant is eligible for the EIP, the early intervention official convenes a meeting, consisting of the parent, such official, the evaluator, the initial service coordinator and any other persons who the parent or the initial service coordinator, with the parent's consent, invite and an IFSP is developed. *N.Y. Pub. Health Law § 2545.*

The factors assessed in developing an IFSP are: (a) the infant's present levels of physical development; (b) the family's strengths, priorities and concerns that relate to enhancing the development of the infant; (c) the major outcomes expected to be achieved for the child and the family; (d) specific early intervention services, including transportation necessary to meet the unique needs of the child and the family; (e) the natural environments where children without disabilities participate; (f) other services, including but not limited to medical services needed by the child or family; (g) other public programs under which the child and family may be eligible for benefits (h) the projected dates for initiation of services and the anticipated duration of such services; (i) the service coordinator selected by the parent; (j) the steps to be taken supporting the potential transition of the toddler with a disability under the education law and for other services. *N.Y. Pub. Health Law § 2545(2)(a)-(j).*

Any failure to comply with these requirements does not necessarily amount to a denial of FAPE, only procedural inadequacies that result in a "loss of educational opportunities or seriously infringe upon on a parent's participation in the creation or formulation of an IEP constitute a denial of a FAPE." *Matrejek v. Brewster Cent. Sch. Dist.*, 471 F.Supp.2d 415, 419 (S.D.N.Y. 2007) (*citing Knable*, 238 F.3d at 766; *Grim*, 346 F.3d at 283); *see also, Grim v. Rhinebeck Central School District*, 346 F. 36 377, 381 (2d Cir. 2003) ("[H]owever, it does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA."). It must be demonstrated that the alleged procedural errors caused substantial harm, a deprivation of education benefits. "Substantive harm occurs when the procedural violations either 'seriously' infringe upon the parents' opportunity to participate in the EIP process or . . . result in the loss of educational opportunity." *Nack v. Orange City School*

*District*, 454 F.3d 604, 612 (6th Cir. 2006); *Perricelli v. Carmel Cent. School Dist.,* 2007 U.S. Dist. LEXIS 9873 (S.D.N.Y. 2007).

In the present case, as the ALJ recognized, all of the procedural requirements were met. S*ee* Exhibit ("Exh.") "A", ALJ Dec. at 10. After receiving a request for EIP services for the infant, a then three year old child diagnosed with autism spectrum disorder. *See* Defendant's Local Rule 56.1 Statement of Undisputed Facts, dated July 30, 2008 ("Rule 56.1 Statement") at ¶17. An early initial official properly designated an initial service coordinator who established a contact with the family. Rule 56.1 Statement at ¶18; *see also* N.Y. Pub. Health Law § 2543. An appropriate and timely evaluation of infant plaintiff then occurred. *Id.* at ¶21. An IFSP was created in accordance with a properly convened meeting by the initial service coordinator. *Id. at ¶23.* All of the participants, including the parents, participated fully in the entire meeting. *Id*. at ¶29. Finally, all of the factors set forth in N.Y. Pub. Health Law § 2545(2)(a)-(j) were properly considered by the team which created the IFSP. *Id*. at ¶¶29-32.

After obtaining the parent's consent, Elizabeth Placido, of the Medical and Health Research Association of New York City, Inc ("MHRA"), as minor plaintiff's initial service coordinator, properly arranged for evaluations of minor plaintiff by Theracare, an agency with which Defendant contracts to provide needs assessments and evaluations for children in the EIP as well as services. Rule 56.1 Statement at ¶¶ 20-21. Theracare, then properly conducted four separate evaluations of infant plaintiff including: (1) a bilingual psychological evaluation conducted by Ingrid I. Rose, P.H.D on October 5, 2006; (2) a bilingual developmental evaluation and parent interview conducted by Barbara Shapiro, M.S. on October 9, 2006; (3) a bilingual speech/language evaluation conducted by Madeline Vargas, M.A., CCC-SLP, on October 4,

2006; and (4) a bilingual occupational therapy evaluation conducted by Francio N. Brinto, M.S., OTR/L, on October 11, 2006. Rule 56.1 Statement at ¶¶ 21.

After all of these thorough evaluations, it was determined that infant plaintiff was eligible for the EIP and an IFSP meeting was held on November 13, 2006. Rule 56.1 Statement at ¶ 23. In further accord with the IDEA and the New York Public Health Law, present at the IFSP meeting were plaintiffs A.G. and L.G., Evelyn Arias, Early Intervention Official Designee, Cheryl Dombrowski, Theracare ABA Supervisor and Evaluation Site Representative, and Valerie Sans, Initial Service Coordinator from MHRA, sitting in for Initial Service Coordinator Elizabeth Placido. *Id.* at 23; *N.Y. Pub. Health Law § 2545*. The purpose of this meeting was to create an IFSP for infant plaintiff in accordance with the IDEA. *See 20 U.S.C. §1436(d)(1)-(8).*

At the IFSP meeting, all parties agreed that the Applied Behavioral Analysis ("ABA") method of special instruction would be the most appropriate treatment modality for infant plaintiff, and that speech therapy, occupational therapy, team meetings, and family training sessions were appropriate. Rule 56.1 Statement at ¶ 30. ABA uses scientific principals of behavioral modification to reduce problematic behaviors and promote positive behaviors and learning, by taking tasks and breaking them down into the smallest measurable units and providing highly structured trials to a child, whose responses are reviewed by a therapist who adjusts the learning program accordingly. Rule 56.1 Statement at 25. The goal is to enable the child to exhibit the desired behavior spontaneously and generalize the tasks into multiple environments without prompts. Rule 56.1 Statement at ¶ 26. The parties all agreed on the goals in infant plaintiff's IFSP. *See* Rule 56.1 Statement at ¶32. The only source of disagreement between the parties was on the appropriate number of hours of services required

for infant plaintiff to achieve progress. Rule 56.1 Statement at ¶¶ 33. However, the fact that the parties, after the DHMH had complied fully with all of the procedural requirements of both federal and state law, came to a different conclusion as to the appropriate number of hours of services required for infant plaintiff to achieve progress does not mean there was a violation of state or federal law in creating the IFSP.

### 2. The DHMH did not impermissibly predetermine infant plaintiff's IFSP and Afforded Parents a Full and Fair Opportunity to Participae in the Development of IFSP.

#### a. Defendant Did Not Predetermine the Amount or Types of Services in the IFSP

Defendants did not predetermine the amount or type of services set forth in the IFSP. For example, immediately prior to the commencement of the IFSP meeting the plaintiffs submitted two evaluations from private evaluators, Dr. Christopher Lucas and Dr. Cecelia McCarton. Although neither of these individual were approved by New York State as qualified personnel[3] to conduct evaluations and are not under contract with the municipality. Rule 56.1 Statement at ¶ 27. Evelyn Arias, the Early Intervention Official Designee responsible for making the final determination on frequency of service based on all the material submitted at an IFSP meeting, read the evaluations of Dr. Lucas and Dr. McCarton prior to the commencement of the meeting. Rule 56.1 Statement at ¶ 28.

Further, these recommendations were also discussed at length in the IFSP meeting (Rule 56.1 Statement at ¶ 28) and the final IFSP included some but not all of Dr. McCarton's recommendations. Rule 56.1 Statement at ¶¶ 30-32.

---

[3] Under N.Y. Pub. Health Law § 2541 a qualified person includes "persons holding a state approved or recognized certificate, license or registration in the field of social work, occupational therapy, and physical therapy." N.Y. Pub. Health Law § 2541(15)(a)(iii)-(v).

Moreover, plaintiffs also asked questions and were asked questions by the other participants of the IFSP meeting. Rule 56.1 Statement at ¶ 29. All of infant plaintiff's problem areas were listed on his IFSP, and discussed with the parents at the IFSP meeting. Rule 56.1 Statement at ¶ 29. The parents also discussed their desired outcomes and goals. Rule 56.1 Statement at ¶ 29.

All of these facts clearly demonstrate that Defendant had not predetermined the types or amount of services in the IFSP, as plaintiffs allege.

#### b. Defendant Afforded Parents a Full and Fair Opportunity to Meaningfully Participate in the IFSP Process

Plaintiffs allege in their Amended Complaint that "[i]n view of *Deal v. Hamilton County Board of Educ.*, 392 F.3d 840 (6th Cir. 2004), *r'hrg and r'hrg en banc denied*, 2005 U.S. App. LEXIS 5631 (6th Cir. 2005), *cert. denied*, 546 U.S. 936 (2005), and *Winkelman v. Parma City School Dist.*, 127 S.Ct. 1994 (2007), N.G.'s parents were also deprived of meaningful participation at N.G.'s IFSP meeting to recommend services and service levels." See Exh. "B", Amended Complaint ("*Am Compl.*") at ¶12. However, neither case is applicable in this action. In *Deal*[4], parents were also told they could not ask questions at the IFSP meeting. *Id.* However, unlike in *Deal* and in *Winkleman*[5], Defendant afforded plaintiffs a full and fair opportunity to meaningfully participate in the IFSP process in accordance with the requirements of the IDEA and the New York Public Health Law. The parents were allowed to ask questions during the IFSP meeting and the plaintiffs private evaluations were discussed at length at the meeting, and

---

[4] In *Deal*, the ALJ also found that the municipality, the Department of Education ("DOE"), "clearly had an unofficial policy of refusing to consider the Lovass style ABA for autistic children." 392 F.3d at 855. The Court found that the DOE had a policy of rejecting any and all requests for Lovaas style ABA for young autistic children, despite their demonstrated individual needs. *Id.* at 854, 855. However, that is not the case here where defendants adopted a Lovaas style ABA method to services for infant plaintiff.

[5] *Winkleman* is also inapplicable to the instant action. In *Winkleman* the Court held that the IDEA grants enforceable rights to parents of disabled children and permits parents to bring *pro se* suits and has nothing to do with the issue of whether Defendant came to the IFSP with a predetermined decision as to what types of services would be offered or how many hours of such services would be provided.

- 12 -

some of the private evaluators' recommendations were incorporated into the IFSP. Rule 56.1 Statement at ¶¶ 28-29.

Additionally, despite plaintiffs assertions to the contrary, the DHMH also did not follow any "internal policies and limitations that precluded the genuine individualization of [infant' plaintiff's] IFSP." *See Exhibit "B"* at 11.    Evelyn Arias, the Early Intervention Official Designee, testified that she has the discretion to approve as many service hours as deemed appropriate including up to 40 hours of ABA services.  Rule 56.1 Statement at ¶ 50.  Cheryl Dombrowski, an ABA Supervisor at Theracare, testified that after the services were provided under the IFSP additional team meetings might be requested if the data from the ABA programs and discussion with the family indicated a need for more frequency.  Rule 56.1 Statement at ¶ 51. Ms. Dombrowski also testified that if, during the course of treatment it appeared that more hours of treatment were needed than were provided in the IFSP, a justification form and/or letter are submitted to the EIP, together with a progress report, stating why additional services are necessary as a clinical matter.  Rule 56.1 Statement at ¶ 52.  In Ms. Dombrowski's experience, such requests are approved but if a request is not approved, parents have due process rights to mediation or hearing.  Rule 56.1 Statement at ¶ 52.

Dr. Prashil Govind, Medical Director of the EIP, also testified that some children in the EIP receive more than 30 hours of instructions and may receive more than 20 hours of ABA, either home or center-based.  Rule 56.1 Statement at ¶ 54.  Elizabeth Placido, infant plaintiff's initial service coordinator who works for agency called MHRA,  also testified that she did not discussed anticipated levels of services with plaintiffs because she does not make the decisions on how many times per week a child will receive services, each case is different and that decision is made by City officials.  Rule 56.1 Statement at ¶ 55.  Hence, based on the

testimony of these witnesses, plaintiff's argument that the EIP has a rigid inflexible program that does not allow for individualized assessment of children within its program, lacks merit.

Furthermore, nothing in the regulations or statute suggest that the DHMH is required to accept the suggestions of the parents or their private evaluators. *Deal v. Hamilton County Board of Educ.*, 392 F.3d 840 (6th Cir. 2004) ("There is nothing in [the] IDEA which requires school systems to accept the parents' point of view, or suffer a procedural violation of the statute."). As discussed above, the DHMH followed all of the procedures required by the IDEA, afforded plaintiff's parents a full and meaningful participation in the IFSP process, and read the private evaluations of both Dr. Lucas and Dr. McCarton, even though not required to by law. The IFSP team also accepted the parents request that a physical therapy evaluation be conducted and made part of the IFSP. Rule 56.1 Statement at ¶¶ 30, 32.

The fact that the DHMH did not accept all of the parents' suggestions or point of view does not mean there was a procedural violation of the statute. *Nack v. Orange City School Dist.*, 454 f.3d 604, 614 (6th Cir. 2006)(fact that an IEP meeting "choose not to adopt all of [the private evaluator's] recommendations hardly compels the conclusion that the IEP itself was lacking").

3.    **The Program Offered by the DHMH was Appropriate and Reasonably Calculated to Produce Progress and Confer an Educational Benefit.**

Under the IDEA, a state and/or municipality has an obligation to provide a free and appropriate education to children with disabilities who reside in their jurisdiction, including an obligation to provide special education services which are tailored to a child's unique needs, and which are reasonably calculated to enable the child to receive educational benefits. *Board of Education v. Rowley*, 458 U.S. 176; *D.F. and D.F. o/b/o N.F. v. Ramapo Central School Dist.*, 430 F.3d 595 (2d Cir. 2005); *Walczak v. Florida Union Free School Dist.*, 430 F.3d 119 (2nd

Cir. 1998); *Mrs. B. v. Milford Bd. Of Educ.*, 103 F.3d 1114 (2nd Cir. 1997).  Under the IFSP

offered by the DHMH, infant plaintiff was to receive under an ABA method: (1) a continuous 12

month program at 5 days per week; (2) 20 hours per week of 1-to-1 Speech instruction; (3)

speech therapy of 5 hours per week; (4) three 30 minute occupational therapy sessions per week;

(5) family training of one hour per week with regards to special instruction, two hours per month

with regards to speech therapy, and one hour per month with regards to occupational therapy;

and (6) a team meeting for one hour per month. Rule 56.1 Statement at ¶ 21.

        After the IFSP meeting Nichole Aiello, Theracare's staffing coordinator, created a

schedule for infant plaintiff which specifically named ABA therapists and other therapists who

all have master's degrees and are licensed by New York State.  Rule 56.1 Statement at ¶ 35.  All

of Theracare's ABA therapists also must go through a training process to ensure that their use of

the ABA is consistent.  Rule 56.1 Statement at ¶ 35.  The lead ABA teacher who would have

been assigned to plaintiffs was Ms. Buckley, specifically chosen by Theracare because of her

skill in working with parents, since plaintiffs had shown such an interest in learning about and

understanding the ABA.  Rule 56.1 Statement at ¶ 36.  Cheryl Dombrowski further testified that

the ABA is not administered in a "cookie-cutter" manner and the techniques in the ABA practice

are individualized to the particular child.  Rule 56.1 Statement at ¶ 57.  Ms. Dombroski testified

infant plaintiff's IFSP was "a good place to start with services considering [infant plaintiff's]

age" and adequate for his needs.  Rule 56.1 Statement at ¶ 57.

        Witnesses for the DHMH testified credibly and accurately that the program

designed by the DHMH would have allowed for infant plaintiff to make progress.  Rule 56.1

Statement at ¶56-59.  Specifically Dr. Jeannette Gong, the Director of the Manhattan Regional

Early Intervention Office, testified that she reviewed infant plaintiffs IFSP and judged the IFSP to be sufficient for infant plaintiff to receive an educational benefit. Rule 56.1 Statement at ¶ 58. This review was based on her review of infant plaintiff's file, her knowledge and expertise in reviewing IFSPs, and because it is known that authorization of services is not a precise science and if a child requires more services, the plan can be amended. Rule 56.1 Statement at ¶ 58. Also, Dr. Pashil Govind, the medical director of the EIP, testified that he has worked with children with autism spectrum disorder/pervasive developmental disability. Rule 56.1 Statement at ¶ 59. Based on his review of infant plaintiff's file, Dr. Govind found that the program created for infant plaintiff at the IFSP meeting was reasonably calculated to confer an educational benefit and were appropriate starting points for his interventions based upon his age and level of severity. Rule 56.1 Statement at ¶ 59.

Plaintiff's witnesses testified that with a less intensive program than theirs, infant plaintiff would make less progress. Rule 56.1 Statement at ¶ 61. However, no witness testified that the IFSP proposed by DHMH would not have enable infant to make educational progress, or that the program was fatal to infant plaintiff making progress. Rule 56.1 Statement at ¶ 61. Notably, Dr. Govind, Dr. Gong, and Cheryl Dombowski all testified that plaintiff would achieve significant progress under plaintiff's IFSP. Rule 56.1 Statement at ¶¶ 56-59.

Plaintiffs witnesses testified that they relied on the Lovaas study in determining the appropriate amount of ABA services for infant plaintiff. Rule 56.1 Statement at ¶ 62. The Lovaas study, compared 19 children with 40 hours of ABA to 19 children who received 10-15 hours of treatment that included no ABA. Rule 56.1 Statement at ¶63. Plaintiffs in essence, tried to convince the ALJ, and now this Court, without any evidence to support the proposition that every autistic child is entitled to 40 hours of ABA services per week and seven days of treatment

per week in order to progress.  However, this fact is not supported by Dr. Lovass' 1987 study which treated the intensive group only five days per week.  Rule 56.1 Statement at ¶63.  Dr. Lovaas website also confirms very young children typically begin treatment at 10-15 hours per week and should gradually increase to 35-40 hours per week by age three.  Rule 56.1 Statement at ¶ 64.  The DHMH is not required to reimburse plaintiffs for the best education money can buy. *Board of Education v. Rowley*, 458 U.S. 176, 189-197.   Since plaintiffs cannot establish that the DHMH IFSP was insufficient, they are not entitled to be reimbursed for the additional services.

It is further supported by the record that the team of DHMH staff and service providers put together by the DHMH had considerable experience and expertise in handling the special education needs of toddlers and infants.  Rule 56.1 Statement at ¶¶ 19, 21, 23, 32, 34. They considered all of the parents concerns and infant plaintiff's individualized needs, and developed an IFSP which stated clear goals and objectives, addressed all relevant areas of need, and contained information demonstrating that the child's needs were understood and would be effectively addressed.  The IFSP was carefully drafted to address infant plaintiff's individualized needs appropriately under the law.  Wherefore, the ALJ properly concluded that the DHMH's IFSP conferred an appropriate educational benefit upon infant plaintiff and defendant is entitled to summary judgment.

### III.    Equitable Considerations Weigh In Favor Of Denying Plaintiffs Reimbursement

Finally, in order for plaintiffs to obtain reimbursement for the private services they obtained, they must not only demonstrate that the DHMH's IFSP was inappropriate, the third prong of the *Burlington/Carter* test requires that the equities must be resolved in the

parents' favor.  *See Burlington*, 471 U.S. at 370-71;  *Carmel Cent. Sch. Dist. v. V.P.*, 373 F.

Supp. 2d 402, 417-18 (S.D.N.Y. 2005).  Equitable considerations are relevant to the relief

fashioned under the IDEA, and the Courts should consider all relevant factors, including the

reasonableness of the parties' position.  *See Wolfe v. Taconic Hills Central School Dist.*, 167 F.

Supp.2d 530, 533 (N.D.N.Y. 2001); 20 U.S.C. § 1412(a)(10)(C)(iii).  Reimbursement is a

discretionary remedy, which must be "appropriate" in light of the purposes of the IDEA –

principally, to provide disabled children with a free appropriate education.  *Burlington, supra,*

471 U.S. at 369.

      In this case, even if the Court should find that the program offered by the DHMH

was inappropriate and the program selected by the parents was appropriate, a consideration of

the equitable factors here weighs heavily in favor of denying reimbursement.  As discussed

below, the record indicates that plaintiffs did not intend to accept the IFSP, but sought an

evaluation from the IFSP team solely to support their claim for a reimbursement of private

services.  Rule 56.1 Statement at ¶¶ 37-44.

      Plaintiffs' actions in this case demonstrate that they had no intention of accepting

the DHMH's program for infant plaintiff, or any modification thereof.  First, Plaintiffs delayed

for six months before requesting a hearing challenging infant plaintiff's IFSP.  Rule 56.1

Statement at ¶ 45.  The timing of this fact is critical.  The DHMH decided upon infant plaintiff's

IFSP on November 13, 2006.  Rule 56.1 Statement at ¶ 23.  On November 17, 2006, Plaintiffs

expressed their dissatisfaction with minor plaintiff's IFSP and stated that they would be seeking

private services, but did not exercise their due process right to a hearing or mediation until May,

2007.  Infant plaintiff was due to age out of the EIP on December 28, 2007.  Rule 56.1 Statement

at ¶ 46.  By delaying the request for a hearing or mediation for nearly seven months, it allowed

plaintiffs to argue, if the ALJ had ordered a new placement for infant plaintiff, that minor plaintiff had become acclimated to her private program and would only remain in the EIP until December of 2008, another six months. Hence, this delay virtually rendered moot any potential modifications that could have been made to minor plaintiff's IFSP and, had the ALJ found in favor of plaintiffs, would have mandated a reimbursement of the private services given to infant plaintiff. This act clearly illustrates that plaintiffs only wanted their private services, the gold standard program, reimbursed at the City's expense.

Second, despite the allegations contained within the Complaint, the testimony before the ALJ in this case demonstrates that plaintiffs, not the DHMH, came to the IFSP meeting with their minds made up and a "my way or the highway" mentality. Rule 56.1 Statement at ¶ 635  By December of 2006, plaintiffs had a full 40 hour private program with Dr. McCarton up and running. Rule 56.1 Statement at ¶ 45. By May 1, 2007, when plaintiffs exercised their due process rights for an administrative hearing, infant plaintiff was already entrenched in his private program. Rule 56.1 Statement at ¶ 45.

Plaintiffs' actions show that they were determined to receive only the program they had selected, were not open to any modifications to the IFSP selected by the DHMH, and were unwilling to accept anything less than the "gold standard program." Rule 56.1 Statement at ¶¶ 66-67. Therefore, equitable considerations do not support plaintiffs' claim, and weigh in favor of denying reimbursement. *See Carmel*, 373 F. Supp. 2d at 418 (finding evidence that parents did not intend to send student to public school supported conclusion that parents were not entitled to tuition reimbursement). Accordingly, the first and third factors of described in *Burlington/Carter* should be decided in favor of DHMH, and DHMH's motion for summary judgment should be granted.

Moreover, there is no requirement that a school district or public education entity provide the Cadillac of services, rather the requirement is that the services must be appropriate. DHMH is not required to "maximize the potential of handicapped children," and reimburse plaintiff's for the best education money can buy. *Board of Education v. Rowley*, 458 U.S. 176, 189-197 (1982); *accord Lunceford v. District of Columbia Bd. Of Educ.*, 745 F.2d 1577, 1583 (D.C. Cir. 1984)(Ruth Bader Ginsburg, J.) (because public "resources are not infinite," federal law "does not secure the best education money can buy; it calls upon the government, more modestly, to provide an appropriate education for each [disabled] child"). Rather, the DHMH is only obligated to provide "a basic floor of opportunity" through the IFSP, individually designed to provide a developmental benefit to the infant or toddler with a disability. *See Adams by & Through Adams v. Oregon*, 195 F3d 1141 (9th Cir. 1999); quoting, *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987) (internal quotations omitted) (reviewing special education placement of grammar school child with disabilities).

Here, Dr. McCarton, the founder of infant plaintiff's private program, testified that she agreed with types of services offered in the IFSP, and with the family trainings and meetings, but she preferred more hours. *Tr.* at 727. Several of plaintiffs' witnesses testified that infant plaintiff's private program was a "gold standard program," "the best," or "one of the top providers in the City." For the reasons discussed more fully above, defendant met his obligation with respect to creating and implementing infant plaintiff's IFSP and should not be required to reimburse Plaintiff's parents for the additional services that they unilaterally decided to purchase.

**IV.    The Unilaterally Private Program Selected By Plaintiffs Should Not Be Considered In Deciding Whether The DHMH's Program Was Appropriate Under The IDEA**

At the outset, it should be noted that at the hearing before the ALJ the DHMH conceded that the parents' program was not inappropriate. Rule 56.1 Statement at ¶ 48. As stated above, the programs offered by plaintiffs and offered by the DHMH are analogous in terms of services provided, but differ in terms of the number of hours of service that should be provided. However, since the program established by the DHMH for infant plaintiff was appropriate, this Court need not consider whether the parents program was appropriate. *M.C. ex rel Mrs. C. v. Voluntown Bd. Of Educ.,* 226 F.3d 60, 66 (2nd Cir 2000). This Court also should not consider any evidence by plaintiffs which suggest that the DHMH's program was inappropriate, or that their private program was appropriate based on any subsequent progress of infant plaintiff in the private program. *J.R. v. Bd. of Educ. of City of Rye Sch. Dist.,* 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004)(holding that a determination of subsequent progress "is necessarily prospective in nature; we therefore must not engage in Monday-morning quarterbacking guided by our knowledge of S.R.'s subsequent progress at Eagle Hill, but rather consider the propriety of the IEP with respect to the likelihood that it would benefit S.R. at the time it was devised."); *see also, D.F. and D.F. o/b/o N.F. v. Ramapo Central School District,* 430 F.3d 595 (2nd Cir 2005)(stating that the First, Third, and Ninth Circuits have all held that retrospective evidence of a student's progress should not be used in evaluating the appropriateness of an IEP).

In this case all of plaintiffs' evidence that the IFSP is reasonably calculated to enable minor plaintiff to receive educational benefits is retro-prospective in nature; and the Courts should "not engage in Monday-morning quarterbacking guided by [its] knowledge of [the child's] subsequent progress [in the child's program]." *J.R. v. Bd. of Educ. of City of Rye Sch. Dist.,* 345 F. Supp. 2d 386, 395. This Court should only consider the propriety of the IFSP with

respect to the likelihood that it would benefit minor plaintiff at the time it was devised. *Id.* In any event, the IFSP designed by the DHMH was appropriately designed to provide services to minor plaintiff, and this Court should not consider whether the plaintiffs' program was appropriate.

### V.    Plaintiff's Allegation of Judicial Bias Should Be Rejected

Plaintiffs also allege that ALJ Kimberly A. O'Brien demonstrated bias on behalf of the defendant in rendering her decision. *See Exh "B"* at 13-23. However, an administrative law judge who serves as an adjudicator is presumed to be unbiased. *See Withrow v. Larkin*, 421 U.S. 35, 47, (1975)(there is a presumption of honesty and integrity in those who serve as adjudicators for administrative proceedings); *United States v. Morgan*, 313 U.S. 409, 421 (1941)(state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances."); *Wolkenstein v. Reville*, 694 F.2d 35, 41 (2d Cir. 1982)("administrators serving as adjudicators are presumed to be unbiased"). The burden lies with the party claiming bias to establish that judicial bias exists.

Plaintiffs support this very serious allegation of bias, with only claims of procedural error and not with any substantive statements of evidence in the record below. *See Exh "B"* at ¶¶13-16 (alleging bias based upon the ALJ not allowing plaintiffs' counsel to ask leading questions to a witness on the last day of these five day hearings not allow the use of a rebuttal witness with regards to a phone log admitted on the fifth day of the administrative hearing). However, a careful reading of the twelve page determination of the ALJ illustrates that the decision was well reasoned and gave a very lengthy and unbiased explanation of why the DHMH's program was appropriate. *See Liteky v. United States*, 510 U.S. 540, 555 (1994)

- 22 -

(holding that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.").  Specifically, the ALJ found: (1) that there was no pre-determination of infant plaintiff's IFSP based on the testimony of plaintiffs, Elizabeth Placcido, and a review of the New York State Department Health Guidelines; (2) the DHMH could provide all required services to infant plaintiff based on plaintiffs premature termination of DHMH services; and (3) infant plaintiff's IFSP was appropriate based on the testimony of Dr. Gong and Dr. Govind and the fact that plaintiffs sought a "gold" program not required by law.  *See Exh. A at* 7-11. Wherefore, plaintiffs have failed to overcome the presumption that the ALJ was unbiased and this allegation should be rejected as without merit by this Court.

## CONCLUSION

Based on the foregoing, defendant Thomas R. Frieden, As Commissioner of the New York City Department of Health & Mental Hygiene, respectfully requests that his motion for summary judgment be granted, and that the Court grant defendant such other and further relief as the Court deems just and proper.

Dated:          July 30, 2008
                New York, New York

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-164
New York, New York  10007
212-788-0874

By:          _____/s_____
             Chevon Andre Brooks (CB 1616)
             Assistant Corporation Counsel

To:    Gary S. Mayerson (GSM8413)
       Mayerson & Associates
       Attorneys for Plaintiff
       330 West 38th Street, Suite 600
       New York, New York 10018
       (via ECF)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

ARGUMENT ...........................................................................................................3

    I.    Standard of Review and Summary Judgment Standards in an IDEA Case.............................................................3

    II.    Plaintiffs Have Failed to Meet Their Burden Of Showing That The IFSP Was Inappropriate As Required By The Three Part Burlington/Carter Test....................5

        A.    The Educational Program And Services Recommended By The DHMH Were Appropriate ..................................................................6

            1.    The IFSP Formulated by Defendant For Infant Plaintiff Conformed with The Procedural Requirements of Both Federal and State Law...................................................7

            2.    The DHMH did not impermissibly predetermine infant plaintiff's IFSP and Afforded Parents a Full and Fair Opportunity to Participae in the Development of IFSP...........................................11

                a.    Defendant Did Not Predetermine the Amount or Types of Services in the IFSP...............................................................11

                b.    Defendant Afforded Parents a Full and Fair Opportunity to Meaningfully Participate in the IFSP Process ..........................................................12

            3.    The Program Offered by the DHMH was Appropriate and Reasonably Calculated to Produce Progress and Confer an Educational Benefit................................................14

III.    Equitable Considerations Weigh In Favor Of
Denying Plaintiffs Reimbursement.................................................17

IV.    The Unilaterally Private Program Selected By
Plaintiffs Should Not Be Considered In Deciding
Whether The DHMH's Program Was  Appropriate
Under The IDEA.................................................................................21

V.    Plaintiff's Allegation of Judicial Bias Should Be
Rejected.................................................................................................22

CONCLUSION.........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                 **Pages**

Adams by & Through Adams v. Oregon,
195 F.3d 1141 (9th Cir. 1999) ................20

Allen v. Coughlin,
64 F.3d 77 (2d Cir. 1995)................4

Antonacchio v. Board of Education of Arlington Central Sch. District,
281 F. Supp. 2d 710 (S.D.N.Y. 2003)................5

Board of Education v. Rowley,
485 U.S. 176 (1982); 458 U.S. 176 (1982)................4, 14, 17, 20

Burlington School Committee v. Department of Education,
471 U.S. 359 (1985)................2, 3, 18

Carmel Central Sch. District v. V.P.,
373 F. Supp. 2d 402 (S.D.N.Y. 2005)................18, 19

Carter,
510 U.S. 7 (1993)................2, 3, 5

Collins v. Bd. of Education of the Red Hook Cent. Sch. Dist.,
164 Fed. Appx. 19, 20 (2d Cir. 2006) ................4

D.F. and D.F. o/b/o N.F. v. Ramapo Central School District,
430 F.3d 595 (2d Cir. 2005)................14, 21

Deal v. Hamilton County Board of Education,
392 F.3d 840 (6th Cir. 2004)
r'hrg and r'hrg en banc denied, 2005 U.S. App. LEXIS 5631 (6th Cir. 2005),
cert. denied, 546 U.S. 936 (2005) ................12, 14

Frank G. v. Board of Education,
459 F.3d 356 (2d Cir. 2006)................6

Gagliardo v. Arlington Central Sch. District,
489 F.3d 105 (2d Cir. 2007)................2

Gregory K. v. Longview Sch. District,
811 F.2d 1307 (9th Cir. 1987) ................20

Grim v. Rhinebeck Central Sch. District,
346 F.3d 377 (2d Cir. 2003)................5, 8

**Cases**                                                                         **Pages**

J.R. v. Board of Education of the City of Rye Sch. District,
    345 F. Supp. 2d 386 (S.D.N.Y. 2004)..................................................5, 21

Knable v. Bexley City Sch. Dist.,
    238 F.3d 755, 768 (6th Cir. 2001) ....................................................8, 6

Liteky v. United States,
    510 U.S. 540 (1994)...............................................................................22

Lunceford v. District of Columbia Board Of Education,
    745 F.2d 1577 (D.C. Cir. 1984)............................................................20

M.B. v. Arlington Central Sch. District,
    2002 U.S. Dist. LEXIS 4015 (S.D.N.Y. March 12, 2002) ......................4

Mrs. C. v. Voluntown Board of Education,
    226 F.3d 60 (2d Cir. 2000)................................................................6, 21

Matrejek v. Brewster Central Sch. District,
    471 F. Supp. 2d 415 (S.D.N.Y. 2007).....................................................8

Mrs. B. v. Milford Board Of Education,
    103 F.3d 1114 (2nd Cir. 1997)..............................................................15

Muller v. Committee on Special Education,
    145 F.3d 95 (2d Cir. 1998)............................................................4, 5, 6

Nack v. Orange City School District,
    454 F.3d 604 (6th Cir. 2006) ...........................................................8, 14

Perricelli v. Carmel Central School District,
    2007 U.S. Dist. LEXIS 9873 (S.D.N.Y. 2007).......................................9

Rowley,
    458 U.S. 176 ...................................................................4, 6, 14, 17, 20

Shafer v. Weist,
    546 U.S. 49 (2005).............................................................................2, 6

Sherman v. Mamaroneck Union Free Sch. District,
    340 F.3d 87 (2d Cir. 2003)......................................................................4

United States v. Morgan,
    313 U.S. 409 (1941)...............................................................................22

**Cases**                                                                                      **Pages**

Walczak v. Florida Union Free Sch. District,
    142 F.3d 119 (2d Cir. 1998).........................................................................2, 4, 6, 14

Winkelman v. Parma City School District,
    127 S. Ct. 1994 (2007).....................................................................................12

Withrow v. Larkin,
    421 U.S. 35 (1975)...........................................................................................22

Wolfe v. Taconic Hills Central School District,
    167 F. Supp. 2d 530 (N.D.N.Y. 2001)............................................................18

Wolkenstein v. Reville,
    694 F.2d 35 (2d Cir. 1982)..............................................................................22

**Statutes**

20 U.S.C. § 1412(a)(10)(C)(iii) ..............................................................................18

20 U.S.C. § 1415(i)(2) .......................................................................................2, 4, 5

20 U.S.C. § 1415(i)(2)(B-(C)) ..........................................................................3, 4, 5

20 U.S.C. § 1431 ........................................................................................................7

20 U.S.C. §1436(d)(1) ............................................................................................10

Fed. R. Civ. P. 56.1 .....................................................................3, 6, 9, 10, 11,
                                       12, 13, 14, 15, 16,
                                       17, 18, 19, 21

Fed. R. Civ. P. 56(b) .............................................................................................2, 3

Fed. R. Civ. P. 56(c) ................................................................................................3

Individuals with Disabilities Education Act, 20 U.S.C. Section 1471 et seq .................1

N.Y. Pub. Health Law § 2541 ...............................................................................7, 11

N.Y. Pub. Health Law § 2541(c) ..............................................................................7

N.Y. Pub. Health Law § 2541(15)-(v) .....................................................................11

N.Y. Pub. Health Law § 2541(15)(a)(iii)(v) ............................................................11

**Statues**                                                                      **Pages**

N.Y. Pub. Health Law § 2542.............................................................................7

N.Y. Pub. Health Law § 2543.........................................................................7, 9

N.Y. Pub. Health Law § 2544.............................................................................7

N.Y. Pub. Health Law § 2545...................................................................7, 8, 9, 10

N.Y. Pub. Health Law § 2545(2)(a)-(j).............................................................8, 9

**STATE OF NEW YORK   :   DEPARTMENT OF HEALTH**

<table>
<tr><td>

IN THE MATTER

OF

**ALEX AND LISA GRINBERG**
**Petitioners**

**ACTING ON BEHALF OF "NG" INFANT**

</td><td>

**DETERMINATION**

**AND**

**ORDER**

COPY

</td></tr>
</table>

On written notice to Petitioners, Alex and Lisa Grinberg, acting on behalf of "NG," a hearing was held before **KIMBERLY A. O'BRIEN ESQ., ADMINISTRATIVE LAW JUDGE** at the Offices of the New York State Department of Health, 90 Church Street, 4th Floor, New York New York.

**ALEX AND LISA GRINBERG** (hereinafter Petitioners or Parents) appeared in person and by Counsel **GARY S. MAYERSON ESQ.**  The New York City Early Intervention Program (hereinafter Respondent or NYCEIP) appeared by **KATHERINE A. CLEMENS ESQ.** Deputy General Counsel, Office of General Counsel for Mental Hygiene. Evidence was received and argument heard, and transcripts of these proceedings were made.

## PROCEDURAL HISTORY

| | |
|---|---|
| Date of Request for Hearing | May 1, 2007 |
| Notice of Hearing | May 11, 2007 |
| Originally Scheduled Hearing Date | May 25, 2007[1] |
| Date of Request for Adjournment | May 21, 2007 |

---

[1] There being no objection Petitioner was granted an adjournment of the original hearing date from May 25, 2007 to July 16, 2007.

| | |
|---|---|
| Hearing Dates | July 16, 2007, July 30, 2007, August 6, 2007, September 24, 2007, October 2, 2007, October 25, 2007 |
| Witnesses for Petitioner | Evelyn Arias, Dr. Deborah Clark, Tamar Frankel, Lisa Grinberg, Marisa Leyden, Dr. Cecelia McCarton, Elizabeth Placido, Margery Rappaport, Panos Rekoutis, and Julie Sandor |
| Witnesses for Respondent | Nichole Aiello, Cheryl Dombrowski, Dr. Jeanette Gong, and Dr. Prashil Govind |
| Final Hearing Transcript Received | November 2, 2007 |
| Final Briefs Submitted | December 4, 2007[2] |

## STATEMENT OF THE CASE

On May 1, 2007, the Petitioners Alex and Lisa Grinberg parents of "NG" exercised their right to an impartial hearing, pursuant to New York State Public Health Law ("PHL") Section 2549 and 10 NYCRR Section 69-4.   At the time of the request for an impartial hearing, "NG" was eligible for early intervention ("EI") services pursuant to PHL Section 2540 *et seq.*   The Early Intervention Program provides each eligible child with specific developmental services as set forth in their own Individualized Family Services Plan ("IFSP"). The impartial hearing officer is required to address whether or not the EI services offered to "NG" were "appropriate" under the Individuals with Disabilities Education Act, 20 U.S.C. Section 1471 *et. seq.* ("IDEA.")  Early Intervention services are defined in PHL Section 2541 and  PHL Section 2545(7) requires that each IFSP include the specific early intervention services necessary to meet the unique needs of

---

[2] On November 21, 2007 the Petitioners' Counsel requested a one week extension for submission of the final briefs. There being no objection to the request the submission deadline was extended from November 27, 2007 to December 4, 2007.

the child and the family. Petitioners requested this hearing and concede that they have the burden of proof in this proceeding, and that they must prove by substantial evidence that "NG's" IFSP is not appropriate. (Tr. 36-7; 10 NYCRR Part 51; SAPA Section 306(1))

## FINDINGS OF FACT

The following Findings of Fact were made after a review of the entire record in this matter. Conflicting evidence, if any, was considered and rejected in favor of the cited evidence. Numbers or letters below in parentheses refer to exhibits (denoted by the prefix "Ex.") or transcript page numbers ("Tr."). These citations refer to evidence found persuasive by the Administrative Law Judge in arriving at a particular finding.

1.    "NG" was born on December 29, 2004 (Ex. A).

2.    On or about October 2006, "NG" underwent a multidisciplinary evaluation and screening with evaluators under contract with the NYCEIP. (Ex. J) The Respondent's Evaluation Report was provided to the Early Intervention Program and to the Petitioners. (Tr. 975)

3.    NYCEIP's evaluators found that "N.G." was eligible for the Early Intervention Program, and an IFSP meeting was scheduled for November 13, 2006. (Ex. C)

4.    On or about November 2006, the Petitioners obtained Independent Evaluations for "NG" from Dr. Christopher Lucas and Dr. Cecilia McCarton (Ex. G & Ex. H) The Independent Report provides a specific recommendation for the level and frequency of services including thirty hours of ABA therapy over "a full seven day period." (Ex. H p.8)

5.    On or about November 13, 2006 an IFSP meeting was held. (Ex. C) Just prior to the start of the IFSP meeting a copy of "NG's" Independent Report was provided to Evelyn Arias, EIOD. (Tr. 346, 348, 900, 1001-2) The IFSP meeting lasted an hour or more, and the required participants were

present and had a copy of the Respondent's Evaluation Report. (PHL Section 2545; Tr. 361, 367-69, 901-2) The Petitioners were the only people at the meeting who had personal knowledge about "NG," and they described their child and his development, and  discussed goals and objectives for "NG" with those participating in the IFSP meeting. (Tr. 367-72, 901, 1003) The  meeting participants talked about and considered the  substance of the Respondent's Report and the Independent  Report. (Tr. 367-72,377, 880, 901, 1006-7, 1283-85) The Respondent's Report and the Independent Report identified similar issues and types of services for "NG" including: twelve month home based program, ABA Therapy, Speech and Language Therapy, Occupational Therapy, Parent/ Family Training and Team Meetings. (Ex. G, Ex.H & Ex. J; Tr. 369-71, 985-991, 1004, 1284, 1292, 1296, 1709-10)  At the conclusion of the IFSP meeting, a determination was made about the type, level and frequency of developmental services appropriate for  "NG" and this was documented in the IFSP, and "NG" was also referred for a physical therapy evaluation. (Ex. C; Tr. 320, 361, 367-8)  The Petitioners disagreed with the level and frequency of services provided for in "NG's" IFSP and noted this in writing directly on the IFSP. (Tr. 377, 909, 911, 1298-9; Ex. C)

6.      During the IFSP meeting, the Petitioners chose Theracare as the Service Coordinator and Theracare created a schedule for the implementation of the services as provided for in "NG's" IFSP and subsequently created a schedule for the speech services accepted by the Petitioners. (Ex. N & Ex. 4;Tr. 377, 994, 1017, 1021, 1026, 1246-9, 1258, 1772-85, 1840; PHL Section 2543& 2545(5))

7.      Participation in the early intervention program is voluntary,  and it is not unusual for parents to refuse or limit their child's participation in the program. (Tr. 1586-1588, 1622; PHL Section 2540 *et. seq.*)

8.    In a letter dated November 17, 2006 from the Petitioners to NYCEIP, the Petitioners stated that they accepted the speech and language services offered in the November 13, 2006 IFSP. However, the Petitioners stated that the "remaining services are not adequate or appropriate" for their child and they intended to secure their own services for "NG" and "seek reimbursement for these costs from the 'Department'." (Ex. F)

9.    The Petitioners accepted home based speech and language therapy services from the Respondent until February 2007 and then obtained the same level of private speech services for "NG" outside the home at their own expense. (Tr. 939, 941,944, 947-8) The Petitioners did not advise the NYCEIP about their dissatisfaction with a provider or scheduling problems. (Tr. 950, 1036, 1038-43, 1059-1, 1812 -1814)

10.    Children participating in the NYCEIP receive ABA services ranging from ten to thirty hours or more per week. (Tr. 379-80,1363, 1371, 1736-37)

11.    "NG" has received "comprehensive and intensive intervention" which includes thirty-five to forty hours of ABA therapy provided seven days a week. (Ex. D)

12.    The Petitioners were advised at the IFSP meeting and throughout the early intervention services application process about how to address questions  and concerns about the Early Intervention Program , and  given information about the right to mediation and a fair hearing if they disagree with the level, frequency or type of services provided for in the IFSP. (Tr.377-378, Ex C & Ex. 9C)

13.    Each IFSP is initially reviewed at three months and at least every six months thereafter or sooner if the parents or providers request changes to the level or type of services provided. (Tr.370-1, 1703-4; PHL Section 2545; Ex.9A, Ex. 9B & Ex.9C)

14.    A Service Provider may at any time recommend a change, reduction and/or addition to the level and /or type of service to be provided to a child by filling out and submitting a justification letter and/or a "Request for Change in Services Form" stating why the modification is necessary, and these requests are often approved. (Ex. 9A, Ex. 12; Tr. pp. 370-71, 1301-2, 1366,1525,1566-9,1703-4)

15.    The Petitioners were provided with information about mediation and fair hearings requests. (Ex.C, Ex. 9C, Ex. 11& Ex.12; Tr. 1578, 1580-1, 1583, 1593-4)

16.    On May 1, 2007, approximately five months after Petitioners had put intensive services in place for "NG" at their own expense, the Petitioners requested mediation and a fair and impartial hearing. (Ex. A; Tr.1031).


## BACKGROUND

"NG" was referred to the early intervention program and was evaluated by Respondent's evaluators. A written report including a summary and four evaluations of "NG" was issued qualifying "NG" to receive early intervention services ("Respondent's Report.") The Respondent's Report did not contain specific recommendations about the level or frequency of services "NG" should receive. The Petitioners obtained their own Independent Evaluations Report for "NG" (Independent Report) which contains a specific recommendation for the type, level and frequency of services including thirty hours of ABA services provided seven days a week. An IFSP meeting was held on or about November 13, 2007. At the conclusion of the IFSP meeting an IFSP was issued and it provided for among other services twenty hours of ABA therapy provided five times per week. While the Independent Report and the IFSP contained different recommendations for the level and frequency of services, both identified similar

6

services for "NG" including: ABA, Occupational Therapy, Parent/ Family Training, Team Meetings, and Speech and Language Therapy. The Petitioners made and signed a written note on "NG's" IFSP stating that they thought the services set forth in "NG's" IFSP were not appropriate. The Petitioners accepted Theracare as the Service Coordinator and Theracare created a schedule for the provision of services for "NG" as set forth in the IFSP. A few days after the IFSP meeting, Petitioners sent a letter dated November 17, 2006 to Respondent stating that but for speech and language services the Petitioners chose not to avail themselves of the services provided for by the Respondent in the IFSP. The Petitioners also stated that they would seek compensation from the Respondent for services they obtained for "NG." The Petitioners at their own expense put in place an intensive private developmental service plan for "NG" which includes but is not limited to thirty-five to forty hours of ABA services provided seven days a week. On or about February 2007, the Petitioners terminated the speech and language services they were receiving from the Respondent and obtained private services for "NG" at their own expense. On May 1, 2007, the Petitioners made a request for mediation and a fair hearing and are seeking reimbursement. A Notice of Hearing was issued on May 16, 2007. The Petitioners requested an adjournment of the first day of hearing, May 25, 2007, and a six-day hearing commenced on July 16, 2007. The record was closed on December 4, 2007.

## DISCUSSION AND CONCLUSIONS

The following conclusions are based on the above findings of fact, hearing record, law and regulations. Throughout the hearing the witnesses demonstrated professionalism and a commitment to the children and families they serve. By all accounts Petitioners are intelligent people devoted to their child "NG" and "NG's" wellbeing. The Petitioners requested this

hearing to seek relief from what they allege was an inappropriate IFSP which was the result of a predetermined "standard package" IFSP created without benefit or consideration of "NG's" individual needs and/or Respondent's inability to provide services set forth in the IFSP including speech and language services and/or the conduct of the IFSP meeting was inappropriate and procedurally flawed which ultimately resulted in an inadequate and inappropriate provision of services as set forth in "NG's" IFSP. Specifically, the Petitioners seek reimbursement for all developmental services, attorneys' fees and any other recoverable costs that they obtained for "NG."

## Pre Determination of "NG's" IFSP

The first issue to be decided is whether "NG's" IFSP was pre determined. The Petitioners contend that before the IFSP meeting Respondent decided that "NG" would be provided with a "standard package of services." Petitioner, Lisa Grinberg testified that well before the IFSP meeting was held Elizabeth Placido, Initial Service Coordinator, told her that "NG" would get a "pretty standard package."(Tr. 878, 1084)  Ms. Grinberg said "NG" ultimately received  the "standard twenty hours of ABA services" provided for in the NYS Department of Health  Early Intervention Guidelines. (Ex 9A) Ms. Placido does not recall discussing levels or frequency of services with Ms. Grinberg, and she did not participate in "NG's" IFSP meeting. (Tr. 846)

I conclude that "NG's" IFSP was not pre determined. The hearing record contains evidence from multiple sources that varying levels and frequency of ABA and other services are provided to children eligible and participating in the early intervention program and these determinations are made at the child's IFSP meeting. Further, The New York State Department

of Health Guidelines ("Guidelines") for the provision of early intervention services are by definition guidelines not rules or mandated requirements. The Guidelines recommend that the level, frequency and type of services provided to a child participating in the early intervention program vary depending on a number of factors including: age, severity of symptoms, rate of progress, a child's health and tolerance for the intervention, and family participation. (Ex. 9A) The Petitioner's interpretation of what she believes she was told by someone who did not participate in the IFSP meeting, and her observation that the Guidelines generally recommend twenty hours of ABA services and "NG's" IFSP provides for twenty hours of ABA services is not sufficient to conclude that "NG's" IFSP was predetermined.

## Scheduling and Provision of Early Intervention Services

Petitioners contend that the Respondent could not provide the services set forth in the IFSP and the speech and language services Petitioner received from the Respondent were inadequate and Respondent failed to provide the speech services as set forth in "NG's" IFSP. Immediately after the IFSP meeting Theracare began to work on scheduling services for "NG." A short time after the IFSP meeting services for "NG" were scheduled and then the Petitioners notified the NYCEIP that they would accept only speech and language services. The speech services were scheduled and provided by Theracare. In February 2007, without notifying NYCEIP that they were unhappy with one of the providers and having difficulty scheduling speech services, the Petitioners terminated the home based speech services provided by Respondent and obtained the same level of speech services for "NG" outside the home setting at their own expense.

I conclude that Respondent could provide the services as set forth in "NG's" IFSP and when Petitioner notified NYCEIP that they would accept only speech and language services

these services were scheduled and provided. Any difficulty the Petitioners encountered in obtaining the prescribed number of hours of speech therapy set forth in the IFSP was due to the Petitioners' failure to bring the issue to the NYCEIP's attention and unreasonable requirements that the services be provided to "NG" at very specific times and days that fit within the intensive plan in place for "NG." (Tr. 1036)

### The IFSP Meeting and "NG's" IFSP

The Petitioners further contend that whether or not they could prove at the hearing that the Respondent pre determined "NGs" IFSP or Respondent could not provide the services in the IFSP, the Respondent did not conduct the IFSP meeting in a way that allowed Petitioners to meaningfully participate and provide input in the development of "NG's" IFSP, "NG's" individual needs and the family's needs were not considered, and the resulting IFSP is not appropriate.

I conclude that "NG's" IFSP is appropriate. Dr. Gong and Dr. Govind both testified that the IFSP is appropriate and Petitioner's expert Dr. McCarton could not say that "NG" would not meaningfully benefit from the frequency and level of services set forth in the IFSP. (Tr. 720-2, 727-8, 781, 1589-1592, 1708- 1710)   The IFSP meeting lasted more than an hour and the IFSP was created at the meeting where: the required participants were present; the Petitioners were provided with information about the early intervention program; information about "NG's" individual needs, family's needs and goals was sought from Petitioners; and information was exchanged, discussed and considered including Respondent's Report as well as the substance of Petitioners' Independent Report.

**Team "N"**

The burden was on the Petitioners to prove that the IFSP was not appropriate. Almost immediately after the IFSP meeting, the Petitioners chose to independently assemble a team of the "best" service providers in the area that they dubbed "Team N." "NG" receives forty hours a week of home based ABA services provided over a seven-day period and Petitioners have twenty-four hour access/seven days a week to "NG's" Team Coordinator. The Petitioner, Lisa Grinberg, provided extensive testimony about her family's commitment to achieving optimal results for "NG." The Petitioners receive intensive parent training, and Ms. Grinberg testified the Petitioners had a window installed in "NGs" room so that she could observe "NG" and the service providers. (Tr. 921, 940-41) Ms. Grinberg testified that she thinks the forty hours of ABA services" "NG" is currently receiving is appropriate and she also said the Petitioners would accept reimbursement for thirty hours of ABA services. (Tr. 920-22, 1080 )

While it is understandable that the Petitioners want the very best for "NG," and that "NG" has an intensive plan in place where "NG" has realized significant benefit, the Petitioners have failed to prove by substantial evidence that "NG's" IFSP is not appropriate and that he could not realize meaningful benefits from the level of ABA services and other developmental services provided for in "NG's" IFSP. After due and careful consideration of the law, regulations, and hearing record, I have determined that "NG's" IFSP is appropriate. Petitioners should not be compensated for any services they have obtained for "NG," attorneys fees or related costs.

11

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

1.    The Petition is **DISMISSED** in all respects;

2.    This **ORDER** shall be effective upon service on the parties by personal service or by

certified or registered mail.

**DATED:** *Troy* , **New York**
*February 16,* **2008**


**KIMBERLY A. O'BRIEN**
**Administrative Law Judge**


To: Alex and Lisa Grinberg
    50 Sutton Place South Apt 9A
    New York, New York 10022

    Gary Mayerson, Esq.
    Mayerson & Associates
    330 West 38th Street, Suite 600
    New York, New York 10018

    Katharine Clemens, Esq.
    New York City Department of Health and Mental Hygiene
    Early Intervention Program
    125 Worth Street, Room 618
    New York, New York 10013

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

A.G. and L.G., on behalf of N.G.,

                                    Plaintiffs,

           --against--                                **AMENDED COMPLAINT**

Richard F. Daines, as Commissioner of the New York          **08 Civ. 1576 (LAK)**
State Department of Health, and Thomas R. Frieden,
As Commissioner of the New York City Department
of Health & Mental Hygiene,

                                    Defendants.

-------------------------------------------------------------

Plaintiffs A.G. and L.G., on behalf of N.G., by their attorneys, Mayerson & Associates, as and for their Complaint against defendants, Richard F. Daines as Commissioner of the New York State Department of Health ("NYDOH") and Thomas R. Frieden as Commissioner of the New York City Department of Health & Mental Hygiene ("DHMH"), allege and state the following:

1.  Plaintiff N.G. is (now) a three-year-old boy diagnosed with an autism spectrum disorder.   At all relevant times, N.G. was a student eligible for early intervention ("EI") services (sometimes referred to as "birth to three") pursuant to PHL § 2540, *et. seq.*,

2.  Plaintiffs reside within New York City, in Manhattan, and are entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400 *et. seq.*, and the pertinent implementing regulations promulgated under the Code of Federal Regulations, as well as the New York State Education Law and its implementing regulations.

3.  Although well known to defendants, plaintiffs are not expressly identified herein by their given names or address, nor further identified because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 ( "FERPA").

4.  Upon information and belief, the DOH and DHMH are jointly responsible for the operation and management the New York City Early Intervention Program ("EIP").  Both procedurally and substantively, the DOH and DHMH were and still are statutorily obligated under the IDEIA, as well as the laws of the State of New York, "to provide early intervention services for infants and toddlers with disabilities and their families."  Defendant is thus legally responsible to N.G. and his parents to ensure procedural and substantive compliance with the IDEIA and New York's implementing regulations.

5.  This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the "Individuals with Disabilities Education Improvement Act" ("IDEIA"), and in particular, 20 U.S.C. § 1439(a)(1), in order to seek review and reversal of the January 16, 2008 Decision of Kimberly A. O'Brien, Esq., Administrative Law Judge ("ALJ").[1]  This action is being brought in an effort to secure procedural and substantive due process entitlements, as well as declaratory and reimbursement relief that was denied to plaintiffs pursuant to the ALJ's Decision.

6.  This action also seeks adjudication of Prongs II and III of the Burlington/Carter test for reimbursement as the ALJ failed to address and adjudicate such issues.

7.  This Court, pursuant to 20 U.S.C. §§ 1415(i)(2)(A) and 1439(a)(1), 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in

---

[1] A copy of ALJ's Decision has been annexed hereto as Exhibit A.

controversy.  Venue is proper in that plaintiffs and defendant all reside or are situated within this district.

8.  The underlying administrative "due process" proceeding was brought by plaintiffs pursuant to the IDEIA to secure declaratory and reimbursement relief during the 2006-2007 school year upon proper notice duly given by plaintiffs.

9.  N.G. was born on December 29, 2004.  N.G. is currently a three-year-old boy diagnosed with an autism spectrum disorder.

10. On or about October 2006, N.G. was evaluated by the EIP's evaluators and found eligible for the EIP.  A meeting was scheduled for November 13, 2006 to develop N.G.'s Individualized Family Services Plan ("IFSP").  Plaintiffs, N.G.'s parents, also secured independent evaluations from Dr. Christopher Lucas and Dr. Cecelia McCarton that provided specific recommendations for the level and frequency of services for N.G.

11. There is compelling evidence in the record that defendant impermissibly predetermined N.G.'s services and service levels, without due regard for and genuine consideration of the independent evaluations secured from Dr. Lucas and Dr. McCarton. Defendant also apparently followed internal policies and limitations that precluded the genuine individualization of N.G.'s IFSP.

12. In view of Deal v. Hamilton County Board of Educ., 392 F.3d 840 (6th Cir. 2004), *r'hrg and r'hrg en banc denied*, 2005 U.S. App. LEXIS 5631 (6th Cir. 2005), *cert. denied*, 546 U.S. 936 (2005), and Winkelman v. Parma City School Dist., 127 S.Ct. 1994 (2007), N.G.'s parents were also deprived of meaningful participation at N.G.'s IFSP meeting to recommend services and service levels.

13. On the last day of a six-day hearing, the ALJ accepted documentary evidence from defendant reflecting an ostensible "log" of telephone contact and other communication with N.G.'s parents and others. The personnel who wrote in the log were not called to testify. Plaintiffs' counsel waived any "five day" authentication or other procedural objections to such evidence being admitted believing, in good faith, that plaintiffs would have an opportunity to provide rebuttal testimony.

14. Although the ALJ applied a relaxed evidentiary standard to accept defendant's "log," the ALJ then arbitrarily and improperly refused plaintiffs' request for an opportunity to present any rebuttal testimony with respect to the new evidence represented by defendant's "log."

15. The ALJ also unduly restricted plaintiffs' counsel in cross-examining defendant's witnesses. Even though impartial hearings are supposed to be subjected to a more relaxed evidentiary standard, the ALJ ordered plaintiffs' counsel not to use leading questions on cross-examination as of that were an accepted limitation on questioning. Even in the most formal evidentiary settings, the Federal Rules of Evidence would permit the use of leading questions on cross-examination.

16. Upon information and belief, the ALJ was biased, not impartial, had already made up her mind, and did not appreciate the applicable legal standards. Such bias and partiality only revealed itself on the last day of hearing.

17. On or about January 16, 2008, ALJ O'Brien rendered her decision. As to plaintiffs' reimbursement claim for the 2006-2007 school year, ALJ O'Brien erroneously held, as a matter of law, that N.G.'s IFSP was procedurally and substantively appropriate

and that N.G.'s parents "should not be compensated for any services they have obtained for N.G." (Decision, p. 11).

18. The ALJ's mere *sixteen* "Findings of Fact" are conclusory and generic and they do not even begin to scratch the surface of a six-day evidentiary record.

19. The ALJ erroneously failed to find, as a matter of law, that there had been impermissible predetermination.

20. The ALJ erroneously failed, as a matter of law, to find that defendant failed to meaningfully include N.G.'s parents and independent evaluations in the IFSP development process.

21. The ALJ erroneously failed to find, as a matter of law, that the DHMH improperly developed service levels that were the product of policy and custom, rather than genuine individualization based on N.G.'s unique needs.

22. The ALJ applied erroneous legal standards and/or ignored the applicable legal standards.

23. The ALJ even violated the standards set forth in New York State's "Manual for Administrative Law Judges and Hearing Officers."

WHEREFORE, it is respectfully submitted that, after the consideration of "additional evidence" expressly allowed by the IDEIA to complete the record, this Court, upon its modified *de novo* review, should:

a. Reverse the ALJ's Decision;

b. Adjudicate the Prong II and Prong III issues that the ALJ failed to adjudicate;

c.   Order that the DHMH reimburse N.G. and his parents, as previously requested, for appropriate intervention and support services obtained for N.G.'s benefit during the 2006-2007 school year;

d.   Declare N.G. and his parents to be the "substantially prevailing party" and grant leave to plaintiffs to submit a statutory fee application; and

e.   Accord plaintiffs such other, further and different relief as may be just under the circumstances.

Dated: May 9, 2008
       New York, New York

                                        _____
                                        Gary S. Mayerson (GSM 8413)
                                        Mayerson & Associates
                                        Attorneys for Plaintiffs
                                        330 West 38th Street, Suite 600
                                        New York, New York 10018
                                        (212) 265-7200
                                        (212) 265-1735 (facsimile)