UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

A.G. and L.G., on behalf of N.G.,

                                             Plaintiffs,     08-Civ.-01576 (LAK)(HBP)

              -against-

Richard F. Daines, as Commissioner of the New York State
Department of Health, and Thomas R. Frieden, as
Commissioner of the New York City Department of Health
& Mental Hygiene,

                                             Defendants.

------------------------------------------------------------------------ x

**DEFENDANT FRIEDEN'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Defendant Thomas R. Frieden, as Commissioner of the New York City Department of Health & Mental Hygiene ("defendant"), respectfully submits this memorandum of law in further support of his motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and in opposition to plaintiffs' motion for summary judgment.

In plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, ("Plaintiffs' Memo") plaintiffs argue that they are entitled to summary judgment because (1) the IFSP developed for N.G. ("infant plaintiff") by the Department of Health and Mental Hygiene ("DHMH") was substantively insufficient; (2) defendant failed to provide proper procedural protections to plaintiffs and (3) the rulings of the Administrative Law Judge ("ALJ") on the last day of hearings were "highly unusual". These arguments must be rejected as they are premised upon a misapprehension of the applicable law.

First, the Individualized Family Service Plan ("IFSP") developed by the DHMH was tailored to confer an educational benefit upon infant plaintiff, and evidence adduced during the administrative hearing demonstrated that infant plaintiff would achieve significant progress under plaintiff's IFSP. Second, and as discussed more fully below, defendants afforded plaintiff all of the proper procedural protections required by the Individuals with Disabilities Education Act, 20 U.S.C. Section 1471 *et. seq.* ("IDEA") and also took additional steps to further assure that the plaintiffs' recommendations were considered. Lastly, any incorrect procedural rulings by the ALJ were harmless error and do not warrant reversal of her thorough and careful decision.

For the reasons discussed below, Plaintiffs have failed to meet their burden under *Burlington/Carter* in establishing that the defendant's program for infant plaintiff was inappropriate and that the equities support the parents' claim. Accordingly, defendant is entitled to judgment as a matter of law, and his motion should be granted.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Rule 56.1 Statement of Material Facts, dated July 30, 2008 ("Defendant's 56.1 Statement"), for a statement of those material facts which are not in dispute, and on which defendant's motion and this opposition are based.

## ARGUMENT

### POINT I

**THE IFSP DEVELOPED FOR INFANT PLAINTIFF WAS SUBSTANTIALLY SUFFICIENT TO CONFER AN EDUCATIONAL BENEFIT UPON PLAINTIFF**

The DHMH created an IFSP for infant plaintiff which would not only have conferred an educational benefit upon infant plaintiff, but under which infant plaintiff would have achieved significant progress had plaintiffs allowed the DHMH to implement it. In

reviewing the adequacy of an IFSP, there are two issues relevant to federal review: 1) whether the educational plan was reasonably calculated to confer educational benefit on the student, and 2) whether the development of the educational plan for the student conformed to procedural requirements. *Walczak v. Florida Union Free Sch. Dist.*, 142 F. 3d 119, 129 (2d Cir. 1998), (citing *Hendrick Hudson District Bd. of Education v. Rowley,* 458 U.S. 176, 206-7 (1982)).

The DHMH is only required to create an IFSP which is reasonably calculated to confer an educational benefit on infant plaintiff. *See id.* Defendant is not required to reimburse plaintiffs for the best education money can buy or to "maximize the potential of handicapped children", but is required to provide "a basic floor of opportunity" through which an infant plaintiff can achieve progress. *Rowley*, 458 U.S. at 189-197; *Adams by & Through Adams v. Oregon*, 195 F.3d 1141 (9th Cir. 1999); (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987) (internal quotations omitted) (reviewing special education placement of grammar school child with disabilities)); (accord *Lunceford v. District of Columbia Bd. Of Educ.*, 745 F.2d 1577, 1583 (D.C. Cir. 1984) (because public "resources are not infinite," federal law "does not secure the best education money can buy; it calls upon the government, more modestly, to provide an appropriate education for each [disabled] child").

The IFSP created by the DHMH was substantively sufficient. Under the IFSP offered by the DHMH, infant plaintiff was to receive under an Applied Behavioral Analysis ("ABA") method: (1) a continuous 12 month program at 5 days per week; (2) 20 hours per week of 1-to-1 Speech instruction; (3) speech therapy of 5 hours per week; (4) three 30 minute occupational therapy sessions per week; (5) family training of one hour per week with regards to special instruction, two hours per month with regards to speech therapy, and one hour per month with regards to occupational therapy; and (6) a team meeting for one hour per month. Rule 56.1

Statement at ¶ 21. However, additional team meetings could have been requested if the data from the ABA programs and discussions with the family indicated a need for more frequency. Tr. at 1483[1].

Plaintiffs' did not disagree with the substance of the services offered, but rather dispute the frequency of the services that were to be provided. Plaintiffs wanted an additional 2 days per week of total services, 10 more hours per week of ABA instruction, 3 ½ more hours per week of occupational therapy, and an additional one hour a week of family training and team meetings. Rule 56.1 Statement at ¶ 21.

Several witnesses deemed credible by the ALJ, testified that infant plaintiff would have achieved progress under infant plaintiff's IFSP based upon the number of hours of services provided for within the IFSP. See defendant's memorandum of law in support of his motion for summary judgment dated July 30, 2008 ("defendant's memo") at 15-16; Rule 56.1 Statement at ¶ 56-59. Significantly Dr. Govind, the medical director of the Early Intervention Program, testified that in studies subsequent to Dr. Lovaas' 1987 study, between 18 and 25 hours of treatment have been shown to be effective in conferring educational benefits. Tr. at 1716.

Significantly, even Dr. McCarton, the founder of infant plaintiff's private program, indicated that infant plaintiff's IFSP would have allowed for infant plaintiff to make progress. Tr. at 687, 721-2, 738. Dr. McCarton also testified that she agreed with types of services offered in the IFSP, and with the family trainings and meetings, but she preferred more hours. *Tr.* at 727.

Despite plaintiffs' assertions to the contrary, there is no requirement that team meetings occur once a week or that services be provided on the weekends. Elizabeth Placido, a

---

[1] References to the transcript at the administrative hearing are cited as "Tr." The transcript is annexed to Defendant's Rule 56.1 Statement, dated July 30, 2008.

service coordinator with MHRA who has worked on close to one hundred cases, testified that team meetings are typically held once a month for sixty minutes, and no family in her experience has asked for more. Tr. at 805, 820-1. Weekend hours, according to Ms. Placido, are typically not discussed at IFSP meetings, but is worked out between the parents and therapists, as services listed on an IFSP as five days per week can occur on any of the seven days. Tr. at 821-2. Cheryl Dombrowski, ABA Supervisor with Theracare, testified that at the time of the IFSP meeting she could not promise weekend hours to plaintiffs, because finding speech therapists who will work on weekends is difficult. However, Theracare occasionally does have people that provide weekend hours and Ms. Dombrowski had to check if these therapists were available or if they had them available. Tr. at 1257, 1335. Nichole Aiello, Early Intervention Staffing Coordinator with Theracare, testified that after the IFSP meeting she offered to have a therapist do makeup sessions under Ms. Dombrowski's supervision on Sundays due to the parents' complaints about the lack of weekend hours. Tr. at 1798, 1802, 1843-4. However she did not hear from plaintiffs between November 17, 2006 and November 27, 2006 when plaintiffs finally responded stating that they were obtaining private ABA and occupational services for infant plaintiff. Tr. at 1798, 1802, 1843-4. Ms. Aiello testified that this therapist was not initially assigned to infant plaintiff because she felt this therapist was not as experienced as the rest of the team. Tr. at 1798. The fact that Theracare was willing to accommodate the parents' wishes does not demonstrate a procedural violation of the IDEA but rather, the purpose behind the IFSP's flexibility.

      Plaintiffs' assertion that the IFSP was insufficient because no functional behavioral assessment ("FBA") was conducted must be rejected. Ms. Dombrowski testified that the reason a FBA was not conducted was because it was not a part of the evaluation process, but rather it would have been a part of the planning for the child's ABA services. Tr. at 1505-6;

5

1529-30. It was not done conducted for infant plaintiff, however, because Therecare did not go forward with providing services due to plaintiffs' unilateral placement of infant plaintiff in a private program. Tr. at 1505-6; 1529-30. Ms. Dombrowski further testified that the evaluations conducted by Theracare assessed infant plaintiff's characteristics comprehensively in all domains (Tr. at 1498) and there were no functional problem mentioned in these evaluations. Tr. at 1284, 1292, 1296. Dr. Govind also testified that he reviewed infant plaintiff's file and all of infant plaintiff's symptoms were mentioned in both the Theracare evaluations and infant plaintiff's private evaluations from the McCarton school. Tr. at 1709-1710. Thus the absence of an FBA has no bearing on the sufficiency of infant's plaintiff's IFSP. This Court should defer to the decision of the ALJ and grant the defendant's motion for summary judgment.

## POINT II

### DEFENDANT PROVIDED PLAINTIFF WITH ALL OF THE PROCEDURAL REQUIREMENTS UNDER THE IDEA.

A.  **Defendants Properly Evaluated Infant Plaintiff And Constructed A Proper IFSP Team Which Included Plaintiffs**

At the outset it should be noted that a municipality is not required to accept the recommendations of a parent. *See Deal v. Hamilton County Board of Educ.*, 392 F.3d 840 (6th Cir. 2004) ("There is nothing in [the] IDEA which requires school systems to accept the parents' point of view, or suffer a procedural violation of the statute."). The fact that a municipality does not accept all of the parents' suggestions or point of view does not mean there was a procedural violation of the statute. *Nack v. Orange City School Dist.*, 454 F.3d 604, 614 (6th Cir. 2006)(fact that an [IFSP] meeting "choose not to adopt all of [the private evaluator's] recommendations hardly compels the conclusion that the [IFSP] itself was lacking").

6

Only procedural inadequacies that result in a "loss of educational opportunities or seriously infringe upon on a parent's participation in the creation or formulation of an [IFSP] constitute a denial of a FAPE." *Matrejek v. Brewster Cent. Sch. Dist.*, 471 F.Supp.2d 415, 419 (S.D.N.Y. 2007) (*citing Knable*, 238 F.3d at 766); *see also, Grim v. Rhinebeck Central School District*, 346 F. 36 377, 381 (2d Cir. 2003) ("[H]owever, it does not follow that every procedural error in the development of an [IFSP] renders that [IFSP] legally inadequate under the IDEA."). Here, plaintiffs fail to demonstrate any procedural inadequacy that deprived infant plaintiff of FAPE. Rather, plaintiffs offer only conjecture about a proposed pre-determination of services and suggest that in not accepting the parents' private evaluators' recommendations in their entirety, the DHMH denied the infant plaintiff FAPE.

Here, all of the procedural requirements under the IDEA and New York Public Health Law were met. S*ee* ALJ Dec. at 10. An initial service coordinator established a contact with the family, an appropriate and timely evaluation of infant plaintiff occurred, an IFSP team was properly assembled, which included the parents who participated fully in the entire meeting, and the IFSP team created an IFSP specifically tailored to address infant plaintiff's needs, considering all of the factors required by the New York Public Health Law. *See* N.Y. Pub. Health Law § 2543, 2545(2)(a)-(j); Rule 56.1 Statement at ¶¶18, 21, 23, 29-32. Specifically, four thorough, separate evaluations of infant plaintiff were conducted by Theracare, an agency with which the DHMH contracts to provide needs assessments and evaluations for children in the EIP as well as services. Rule 56.1 Statement at ¶¶ 20-21. An IFSP meeting was held on November 13, 2006, in which plaintiffs A.G. and L.G., Evelyn Arias, Early Intervention Official Designee, Cheryl Dombrowski, Theracare ABA Supervisor and Evaluation Site Representative, and Valerie Sans, Initial Service Coordinator from MHRA, were all in attendance for the purpose

of creating an IFSP for infant plaintiff in accordance with the IDEA. *See 20 U.S.C. §1436(d)(1)-(8);* Rule 56.1 Statement at ¶ 23. Hence, procedurally all of the steps required by the IDEA and New York Public Health Law were complied with.

### B.   Defendants Did Not Pre-Determine Infant Plaintiff's IFSP

In following all of the procedural requirements of the IDEA and New York Public Health Law, defendant also did not predetermine the amount or type of services set forth in the IFSP. The November 13, 2006 IFSP meeting included an active dialogue in which the plaintiffs asked questions and were asked questions by the other participants of the IFSP meeting, infant plaintiff's problem areas were listed on his IFSP, and discussed with the parents, and the parents discussed their desired outcomes and goals . Rule 56.1 Statement at ¶ 29. The IFSP team also accepted the parents' request that a physical therapy evaluation be conducted and made part of the IFSP. Rule 56.1 Statement at ¶¶ 30, 32. The IFSP meeting lasted for an hour or more. Rule 56.1 Statement at ¶ 24.

Moreover, Ms. Arias reviewed the two evaluations from private evaluators submitted by plaintiffs prior to the commencement of the IFSP meeting. Their recommendations were discussed at length in the IFSP meeting, and the final IFSP included some but not all of their recommendations. Rule 56.1 Statement at ¶¶ 28, 30-32; Tr. at 1431. Plaintiffs' suggestion that the IFSP members attended this meeting with their minds already set on an IFSP for plaintiff is pure conjecture not supported by the administrative record.

Defendant also does not have any internal policies or limitations that preclude the individualization of infant plaintiff's IFSP. Plaintiffs' primary evidence for this assertion is an alleged conversation between Evelyn Placido, plaintiffs' initial service coordinator, and plaintiff N.G. This conversation is alleged to have occurred days before the IFSP meeting, and Ms. Placido allegedly stated that infant plaintiff would receive 20 hours of ABA, 5 hours of speech,

8

and "some occupational therapy," as such combination is "a pretty standard package". *See* Plaintiff's Memo at 10; Tr. at 878. Ms. Placido however, does not recall having such a conversation. Tr. at 846. In fact, plaintiffs' assertion is contradicted by Ms. Placido, who testified that she did not discuss anticipated levels of services with plaintiffs because she does not make the decisions on how many times per week a child will receive services, each case is different and that decision is made by City officials. Rule 56.1 Statement at ¶ 55; *see also* Defendant's Memo at 13-14.

Additionally, Ms. Arias, Ms Dombowski, and Dr. Govind all testified as to the very number of hours of ABA services that might be provided. Rule 56.1 Statement at ¶ 50-54. Given the abundance of testimony that runs contrary to this assertion, as well as the fact that Ms. Placido id not make the decision regarding the frequency of infant plaintiff's services, plaintiffs' reliance on Ms Placido's testimony is exaggerated and wholly misplaced.

Plaintiffs also diminish the testimony supporting the appropriateness of plaintiffs' IFSP based on their assessment that Dr. Gong is not an expert in autism. However, they entirely ignore the testimony of Dr. Pashil Govind, the medical director of the EIP, who testified that he has studied autism spectrum disorder/pervasive development disability (Tr. at 1677-8), evaluated and worked with children with autism spectrum disorder/pervasive developmental disability, and based on his review of infant plaintiff's file, found the IFSP was reasonably calculated to confer an educational benefit on infant plaintiff and was an appropriate starting point for the recommnedned interventions based upon infant plaintiff's age and level of severity. *See* Rule 56.1 Statement at ¶ 59.

*T.P. v. Mamaroneck Union Free Sch. Dist.*, 2007 U.S. Dist. LEXIS 35288 (S.D.N.Y 2007), cited repeatedly by plaintiffs as evidence of predetermination in this action is

readily distinguishable from the case at bar. In *T.P.*, Susan Young, the school district's ABA supervisor and autism consultant, admitted to creating a rather bizarre "comparative chart or note of sorts, prepared by Young in her role as Mamaroneck's autism consultant, just moments before the July CSE meeting which . . . list[ed] in column-style comparison format the treatment and support," recommendations by Dr. McCarton and the school's response. *T.P* 2007 U.S. Dist. LEXIS at *17-18. This chart specifically listed the level of services and frequency of hours that were to be provided for the student in that case and was created prior to the CSE meeting. In addition, Ms. Young did not attend the CSE meeting, stating that she felt she had "already written everything that [she] needed to present." *See id.* Further, the Court in *T.P.* held that predetermination was evident because "the goals and objectives were not established and thoroughly discussed at the June meeting" and school officials "had spoken of what would be appropriate placement before the July meeting development of goals and objectives." *See id* at *21. This was not the case here, where the IFSP meeting lasted for at least an hour, plaintiffs' private recommendations were discussed at length, the goals and objectives of the IFSP were discussed and noted on the IFSP, and Ms. Placido testified that she does not discuss the level or frequency of services that are to be provided prior to an IFSP meeting because that is not her determination to make. Hence, no factual similarities exist between the facts here and the facts in *T.P*

*Deal v. Hamilton County Board of Educ.*, 392 F.3d 840 (6th Cir. 2004), *r'hrg and r'hrg en banc denied*, 2005 U.S. App. LEXIS 5631 (6th Cir. 2005), *cert. denied*, 546 U.S. 936 (2005), and *Winkelman v. Parma City School Dist.*, 127 S.Ct. 1994 (2007), are also inapposite. In *Deal*, the parents were told they could not ask questions at the IFSP meeting. *Id.* However, unlike in *Deal*, defendant here afforded plaintiffs a full and fair opportunity to meaningfully

participate in the IFSP process in accordance with the requirements of the IDEA and the New York Public Health Law. The parents were allowed to ask questions during the IFSP meeting, the plaintiffs private evaluations were discussed at length at the meeting, and some of the private evaluators' recommendations were incorporated into the IFSP. Rule 56.1 Statement at ¶¶ 28-29.[2]

Based on the foregoing, this Court should reject Plaintiffs' claim that infant plaintiff's IFSP was predetermined and grant defendant's motion for summary judgment in its entirety.

## POINT III

### THE RULINGS OF THE ALJ CITED BY PLAINTIFFS WERE, IF ANYTHING, HARMLESS ERROR NOT WARRANTING REVERSAL OF HER DECISION

Plaintiffs' argument that the ALJ's careful and thorough twelve page decision after a five day hearing should be reversed because plaintiffs were not allowed, to ask leading questions to one witness during part of their cross-examination and also not allowed to present rebuttal testimony as to a "log that was admitted without objection," should be rejected.

Defendant does not concede that these rulings were in error. However a careful reading of the twelve page determination of the ALJ illustrates that the decision was well reasoned, gave a very lengthy and unbiased explanation of why the DHMH's program was appropriate, and also provided a sound basis for her decision on evidence other than the testimony of this witness or the "log". *C.f. Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair

---

[2] Defendant previously distinguished *Winkelman* in Defendant's Memo at 12 n.5.

judgment impossible."). The ALJ's decision is supported by credible testimony of defendant's witnesses and several factors aside from these two alleged "curious" rulings that warrant the ALJ's finding that the DHMH created an IFSP that would confer an educational benefit upon infant plaintiff. This Court should defer to the rulings of the ALJ in this case as she was present at the hearing and these issues relate to decisions within her judicial discretion.

However, if this Court were to find that these rulings were incorrect, this Court should find that they were harmless error which do not effect the merits of either plaintiffs' or defendant's case and do not warrant reversal of the ALJ's decision. *Am. Stevedoring Ltd. v. Marinelli*, 248 F.3d 54, 66 (2d. Cir. 2001) (finding an ALJ's error harmless assuming *arguendo* that the ALJ had erroneously disregarded a doctor's statement about a 50% blockage standard, because the ALJ discounted the doctor's opinion for several other reasons); *Cabouli v. Chappaqua Cent. Sch. Dist.*, 202 Fed. Appx. 519, n 6 (S.D.N.Y. 2006) (upholding a decision by an ALJ finding harmlesss error the fact that the ALJ's opinion which misstated an important fact, because the error, while troubling, did not require reversal of the entire decision).

Over the course of the five day hearing the ALJ created an adequate record and conducted a thorough review of that record in making her decision. The rulings at issue do not effect the merits of the case or the administrative record before the Court. Plaintiffs' counsel was permitted to cross-examine the witness without a restriction as to scope, even if the mode of cross-examination was limited. Counsel also freely admits that he did not object to the admittance of log entitled "service-coordination notes" in the "spirit of cooperation". *See* Plaintiffs' Memo at 2. Plaintiffs' counsel now asks the Court to reverse the entire decision of the ALJ without explaining how, if at all, these rulings effected the merits of their case. The ALJ's decision clearly shows that she did not rely on this log as determinative evidence in making her

decision and if, anything it should be considered surplus that is at best, harmless error. *See Cotis v. Massanari*, 2001 U.S. Dist. LEXIS 6627 (S.D.N.Y. 2001) (finding an additional doctor's report surplusage which was not relied on solely by the ALJ and its inclusion in the record, at best, harmless error). The decision points to the testimony of Dr. Govind and Dr. Gong, the New York State Department of Health Guidelines, the schedule that Thearacare created for infant plaintiff, testimony regarding the length of the IFSP meeting, and plaintiffs' own testimony illustrating their unwillingness to compromise in the implementation of infant plaintiff's IFSP as the basis for her decision. *See* ALJ Decision at 7-11. Hence, this Court should not reverse the decision of the ALJ.

### POINT IV

### PLAINTIFFS' SUMMARY JUDGMENT MOTION FAILS TO PROVIDE A BASIS FOR OVERTURNING THE DECISION BY THE ALJ

A.   The Detailed Decision Of The Administrative Law Judge Should Be Upheld

The case law in this Circuit is quite clear; a Court should defer to the special expertise of an ALJ in determining whether an infant plaintiff would achieve academic progress under an IFSP. *See Matrejek v. Brewster Cent. Sch. Dist.*, 2008 U.S. App. LEXIS 17947 (2d Cir. 2008)("An assessment of educational progress is a type of judgment for which the district court should defer to the SRO's educational experience, particularly where . . . the district court's decision was based solely on the record that was before the SRO") (citing *M.S. ex rel. S.S. v. Bd. of Educ. of Yonkers*, 231 F.3d 96, 105 (2d Cir. 2000)), *abrogated on other grounds by Schaffer v. Weast*, 546 U.S. 49, 57-58 (2005). A district court should defer to an ALJ who has conducted a thorough and careful review of the record and where "[t]he findings of the SRO were detailed, the administrative proceedings were thorough, and the conclusions arrived at were supported by

13

a preponderance of evidence. *See Matrejek*, 2008 U.S. App. LEXIS at 17947; citing *Rowley, 458 U.S. 176, 206*; *Walczak*, 142 F.3d 119. The reasoning for such deference to the judgments of the ALJ is clear, because while the "district court must engage in an independent review of the administrative record, it is 'expected to give due weight to these proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *See Cabouli v. Chappaqua Cent. Sch. Dist.* 202 Fed. Appx. 519 (2d Cir 2006); citing *Walczak*, 142 F.3d at 129.

As discussed above, the testimony adduced throughout the course of the five day hearing demonstrates the abundance of evidence presented by both sides as to adequacies of the DHMH's program. The extensive twelve page determination of the ALJ also demonstrates that she conducted a thorough and careful review of the administrative record, and cited to documentary and testimonial evidence which amply supports her decision. *See Exh. A*, annexed to Defendant's Memo. The ALJ reviewed the testimony of both plaintiffs' experts and defendant's experts and determined that defendant's experts were more credible and that infant plaintiff's IFSP was appropriate. Hence, this Court should give due weight to the administrative proceeding and the IFSP created by the DHMH and defer to the ALJ, since the ALJ has the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy. *See Sherman v. Mamaroneck Union Free Sch. Dist.*, 340 F. 3d 87, 93 (2d Cir. 2003) (quoting *Walczak*, 142 F. 3d at 129 (internal quotation marks and citations omitted))

**B.    The Equities Do Not Favor the Plaintiffs**

Despite Plaintiffs' assertions to the contrary, the administrative record also demonstrates that plaintiffs did not intend to accept the IFSP, but sought an evaluation from the IFSP team solely to support their claim for a reimbursement of private services. Rule 56.1 Statement at ¶¶ 37-44. Equities can weigh in favor of a municipality when the evidence shows

that a parent had no intention of using the public services afforded to them. *Carmel Cent. Sch. Dist. v. V.P.*, 373 F. Supp. 2d 402, 417-18 (S.D.N.Y. 2005) (finding evidence that parents did not intend to send student to public school supported conclusion that parents were not entitled to tuition reimbursement). Here, plaintiffs, not the IFSP team, came to the IFSP meeting with their minds already made up and plaintiffs' delay in seeking relief (see Defendant's Memo at 18-19; Rule 56.1 Statement at ¶ 45, 46) virtually rendered moot any potential modifications that could have been made to infant plaintiff's IFSP.

Plaintiffs also had a fully developed private program with Dr. McCarton in efect by December of 2006, only one month after the DHMH had created an IFSP for infant plaintiff, and that plaintiffs obtained private ABA and occupational services for infant plaintiff on November 27, 2006, a mere 14 days after the IFSP meeting. Rule 56.1 Statement at ¶ 45. By May 1, 2007, when plaintiffs exercised their due process rights for an administrative hearing, infant plaintiff was seven months away from aging out of the program and virtually entrenched in his private program. Rule 56.1 Statement at ¶ 45. Plaintiffs' actions demonstrate that they were not willing to "compromise with the defendant." The equities favor defendant and plaintiffs' motion for summary judgment should be denied.

## CONCLUSION

For the reasons set forth above and the papers previously submitted, defendant respectfully requests that he be awarded summary judgment, that the Amended Complaint be dismissed as against him in its entirety, and that the Court grant defendant such other and further relief as the Court deems just and proper.

Dated:        September 5, 2008
                New York, New York

                                          MICHAEL A. CARDOZO
                                          Corporation Counsel of the
                                          City of New York
                                          Attorney for Defendant
                                          100 Church Street, Room 2-164
                                          New York, New York  10007
                                          212-788-0874

                                    By:            /s
                                            Chevon Andre Brooks (CB 1616)
                                            Assistant Corporation Counsel

To:        Gary S. Mayerson (GSM8413)
           Mayerson & Associates
           Attorneys for Plaintiff
           330 West 38th Street, Suite 600
           New York, New York 10018
           (via ECF)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT

      POINT I

           THE IFSP DEVELOPED FOR INFANT PLAINTIFF WAS SUBSTANTIALLY SUFFICIENT TO CONFER AN EDUCATIONAL BENEFIT UPON PLAINTIFF ................................ 2

      POINT II

           DEFENDANT PROVIDED PLAINTIFF WITH ALL OF THE PROCEDURAL REQUIREMENTS UNDER THE IDEA ............................................. 6

              A.   Defendants Properly Evaluated Infant Plaintiff And Constructed A Proper IFSP Team Which Included Plaintiffs ............................................................. 6

              B.   Defendants Did Not Pre-Determine Infant Plaintiff's IFSP ........................................ 8

      POINT III

           The Rulings of the ALJ Cited by Plaintiffs Were, If Anything, Harmless Error not Warranting Reversal of Her Decision ................................................................. 11

|  | Page |
|---|---|
| **POINT IV** | |
| Plaintiffs' Summary Judgment Motion Fails To Provide A Basis For Overturning The Decision By The ALJ | 13 |
|     A. The Detailed Decision Of The Administrative Law Judge Should Be Upheld | 13 |
|     B. The Equities Do Not Favor the Plaintiffs | 14 |
| CONCLUSION | 16 |

## TABLE OF AUTHORITIES

**Cases**                                                                                                               **Pages**

<u>Adams by & Through Adams v. Oregon</u>,
    195 F.3d 1141 (9th Cir. 1999) ........................................................................................3

<u>Am. Stevedoring Ltd. v. Marinelli</u>,
    248 F.3d 54 (2d. Cir. 2001)..........................................................................................12

<u>C.f. Liteky v. United States</u>,
    510 U.S. 540 (1994).....................................................................................................11

<u>Carmel Cent. Sch. Dist. v. V.P.</u>,
    373 F. Supp. 2d 402 (S.D.N.Y. 2005)..........................................................................15

<u>Cotis v. Massanari</u>,
    2001 U.S. Dist. LEXIS 6627 (S.D.N.Y. 2001).............................................................13

<u>Deal v. Hamilton County Board of Educ.</u>,
    392 F.3d 840 (6th Cir. 2004) ....................................................................................6, 10

<u>Gregory K. v. Longview Sch. Dist.</u>,
    811 F.2d 1307 (9th Cir. 1987)) ......................................................................................3

<u>Grim v. Rhinebeck Central School District</u>,
    346 F. 36 (2d Cir. 2003)..................................................................................................7

<u>Hendrick Hudson District Bd. of Education v. Rowley</u>,
    458 U.S. 176 (1982).......................................................................................................3

<u>Knable</u>,
    238 F.3d at 766 ..............................................................................................................7

<u>Lunceford v. District of Columbia Bd. Of Educ.</u>,
    745 F.2d 1577 (D.C. Cir. 1984).....................................................................................3

<u>Matrejek v. Brewster Cent. Sch. Dist.</u>,
    471 F. Supp. 2d 415 (S.D.N.Y. 2007)............................................................................7

<u>Matrejek v. Brewster Cent. Sch. Dist.</u>,
    2008 U.S. App. LEXIS 17947 (2d Cir. 2008) .............................................................13

<u>Nack v. Orange City School Dist.</u>,
    454 F.3d 604 (6th Cir. 2006) .........................................................................................6

**Cases**                                                                                                                                    **Pages**

Schaffer v. Weast,
    546 U.S. 49 (2005)..................................................................................................................13

Sherman v. Mamaroneck Union Free Sch. Dist.,
    340 F.3d 87 (2d Cir. 2003)....................................................................................................14

T.P,
    2007 U.S. Dist. LEXIS at 17-18..........................................................................................10

T.P. v. Mamaroneck Union Free Sch. Dist.,
    2007 U.S. Dist. LEXIS 35288 (S.D.N.Y 2007).....................................................................9

Walczak v. Florida Union Free Sch. Dist.,
    142 F.3d 119 (2d Cir. 1998)..............................................................................................3, 14

Winkelman v. Parma City School Dist.,
    127 S. Ct. 1994 (2007).........................................................................................................10

**Statutes**

Individuals with Disabilities Education Act, 20 U.S.C. Section 1471 *et. seq* ................................2

N.Y. Pub. Health Law § 2543, 2545(2) .........................................................................................7